UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICK JACK, et al.,

                Plaintiffs,

v.

ASBESTOS CORPORATION LTD., et al.,

                Defendants.

CASE NO. C17-0537JLR

ORDER GRANTING EMERGENCY MOTION FOR PRESERVATION OF EVIDENCE

## I. INTRODUCTION

Before the court is Defendant Genuine Parts Company's ("GPC") emergency motion for preservation of evidence (Mot. (Dkt. # 207)), joined by Defendants Kelsey-Hayes Company ("Kelsey-Hayes"), MW Customs Papers LLC ("MW"), Asbestos Corporation Limited ("Asbestos Corp."), Ingersoll Rand Co. ("Ingersoll Rand"), and Velan Valve Corporation ("Velan") (collectively, "Defendants") (*see* 10/18/2017 Not. of Joinder (Dkt. # 209); 10/20/2017 Not. of Joinder (Dkt. # 222)). The

ORDER - 1

court has considered the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. The court also heard arguments of the parties at two telephonic hearings. (*See* 10/18/2017 Min. Entry (Dkt. # 214); 10/19/2017 Min. Entry (Dkt. # 221).) Being fully advised, the court GRANTS the motion for preservation of evidence and ORDERS the parties to meet and confer, and submit a joint statement with the information detailed below.

## II. BACKGROUND

Plaintiffs Leslie Jack and her late-husband Patrick Jack brought suit against numerous defendants, including GPC, Kelsey-Hayes, MW, Asbestos Corp., Ingersoll Rand, and Velan. (*See generally* Compl. (Dkt. # 1).) The complaint alleges that Mr. Jack was exposed to asbestos throughout his life (Compl. ¶ 1) and learned in July 2016 that he had mesothelioma (*id.* ¶ 44F). He and his wife brought suit against defendants that "manufactured and/or put asbestos and asbestos-containing products . . . into the stream of commerce and/or used asbestos containing material at work sites where [Mr. Jack] worked." (*Id.* ¶ 46.)

Mr. Jack passed away on October 15, 2017. (Loftis Decl. (Dkt. # 208) ¶ 4, Ex. B at 1.) Mrs. Jack's attorney notified opposing counsel of this news on October 17, 2017. (Mot. at 2; Loftis Decl. ¶ 4, Ex. B at 1.) Counsel for GPC replied the same day, renewing a prior defense request for an autopsy. (*See* Loftis Decl. ¶ 5, Ex. C at 1.) Mrs. Jack's attorney responded that "the asbestos companies who manufactured, sold, and distributed asbestos products without warnings that Mr. Jack used throughout his life do not have a legal right to interfere with the funeral and burial plans of Mr. Jack's grieving family."

(Loftis Decl. ¶ 6, Ex. D at 1.) Her attorney also informed GPC that the family is scheduled to cremate Mr. Jack's remains, likely on Thursday, October 19, 2017. (*Id.*) After conferencing over the telephone, the parties could not agree on the autopsy issue. (*Compare* Loftis Decl. ¶ 10, Ex. H, *with id.* ¶ 11, Ex. I.)

On October 18, 2017, GPC filed an emergency motion to "compel [Mrs. Jack] to make the remains of [Mr. Jack] available for an autopsy and preservation of the lungs for later digestion studies," pursuant to Federal Rule of Civil Procedure 35. (Mot. at 1.); *see* Fed. R. Civ. P. 35(a). Other defendants—Kelsey-Hayes, MW, Asbestos Corp., Ingersoll Rand, and Velan—joined GPC's motion. (10/18/2017 Not. of Joinder at 1; 10/20/2017 Not. of Joinder at 1.) The court held a telephonic hearing the same day and issued a TRO preserving the status quo until the court could hold a hearing on the merits of the motion. (*See* 10/18/2017 Min. Entry.) On Thursday, October 19, 2017, the court held the hearing on the merits, granted a continuance of the previously-issued TRO, and ordered preservation of the body in whole until the parties submitted supplemental briefing. (*See* 10/19/2017 Min. Entry.) As requested, GPC and Mrs. Jack have submitted supplemental briefing and various declarations in support of their respective arguments. (*See* Defs. Supplemental Br. (Dkt. # 224); Pls. Supplemental Br. (Dkt. # 227).) The court now considers the merits of the emergency motion.

### III. ANALYSIS

Defendants argue that Federal Rule of Civil Procedure 35 permits the court to make the remains of Mr. Jack available for autopsy so that his lungs can be preserved for

//

later medical studies.[1] (Defs. Supplemental Br. at 1.) Mrs. Jack argues that Defendants have not shown the necessary good cause for an autopsy to be ordered. (Resp. (Dkt. # 217) at 6-7.) The court finds that Defendants have sufficiently demonstrated good cause, and thus grants the motion to preserve evidence.

**A. Legal Standard**

Federal Rule of Civil Procedure 35(a)(1) provides that "[t]he court . . . may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order "may be made only on motion for good cause and on notice to all parties and the person to be examined; and . . . must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id.* 35(a)(2). As a pretrial discovery rule, Rule 35(a) is interpreted liberally in favor of granting discovery. *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964). However, courts are skeptical of vague requests to conduct Rule 35(a) medical examinations because "Rule 35(a) does not afford a carte blanche right of . . . examination." *In re Certain Asbestos Cases*, 112 F.R.D. 427, 434 (N.D. Tex. 1986) ("*Certain Asbestos I*").

By its express terms, Rule 35 requires the movant to demonstrate that (1) the matter of a party's physical condition is "in controversy"; and (2) there is "good cause"

---

[1] Defendants also argue that an autopsy is warranted under RCW 68.50.102. (Mot. at 5-8; Defs. Supplemental Br. at 1-2.) However, because the Federal Rules of Civil Procedure control procedural matters in a federal case, *Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965), the court conducts its analysis solely under Federal Rule of Civil Procedure 35.

for the examination. *Schlagenhauf*, 379 U.S. at 117. These two requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* at 118. The requirements are met "only when the movant produces sufficient information about the particular decedent." *Certain Asbestos I*, 112 F.R.D. at 435. "The ability of the movant to obtain the desired information by other means is also relevant." *Id.*

Defendants are correct that Rule 35(a) applies to autopsies. (*See* Mot. at 4.) In the context of an autopsy, courts require a movant to show that "(1) the decedent's physical condition is in controversy and (2) that an autopsy is the most medically reasonable method, considering the reasonable medical alternatives, for determining the decedent's physical condition at death." *Belkow v. Celotex Corp.*, No. 89 C 3049, 1989 WL 56976, at *2 (N.D. Ill. May 22, 1989).[2] The movant must demonstrate each requirement through affidavit testimony. *In re Certain Asbestos Cases*, 113 F.R.D. 612, 614 (N.D. Tex. 1986) ("*Certain Asbestos II*").

//

//

//

---

[2] Defendants rely on Ninth Circuit precedent that analyzes the applicability of Rule 35 generally, but not in the context of an autopsy. (*See* Defs. Supplemental Br. at 2-7.) The court adopts instead the legal requirements and reasoning of district courts that have applied Rule 35 specifically to requests for autopsies. *See, e.g.*, *Belkow*, 1989 WL 56976, at *2.

ORDER - 5

## B. Defendants' Emergency Motion to Preserve Evidence

In light of the applicable law and the parties' submissions, the court finds that Defendants have successfully demonstrated both of the necessary factors. The court addresses each factor in turn.

### 1. Physical Condition in Controversy

The court does not dwell on this first factor because the analysis of this factor as applied to this case is straightforward. The uncertainty of Mr. Jack's physical condition at the time of death and his cause of death forms the crux of the suit against Defendants. (*See generally* Compl.) Mrs. Jack does not argue otherwise in her supplemental briefing, and thus the court finds that Defendants successfully demonstrate the first requirement of Rule 35(a) that Mr. Jack's physical condition is in controversy.

### 2. Good Cause

Good cause requires a showing of specific facts that demonstrate the need for the information sought and the lack of means for obtaining it elsewhere. *See Schlagenhauf*, 379 U.S. at 118. In other words, the movant must show that an autopsy is "the most medically reasonable method" in comparison to "the reasonable medical alternatives." *Belkow*, 1989 WL 56976, at *2; *Brewer v. Am. Med. Alert Corp.*, No. 1:08-0069, 2009 WL 2996487, at *4 (M.D. Tenn. Sept. 15, 2009) ("The court must be convinced that an autopsy will produce reliable data that is clearly superior to what is already available." (internal quotation marks omitted)). Additionally, the movant must make a "strong showing" that an autopsy will "establish the facts sought." *Brewer*, 2009 WL 2996487, at *4. In its determination, the court "will consider whether the decedent's survivors will

suffer undue spiritual, religious, personal, or emotional hardship if the decedent is required to undergo an autopsy." *Certain Asbestos II*, 113 F.R.D. at 614.

The parties disagree about whether the available medical alternatives—Mr. Jack's clinical history, occupational history, and existing tissue samples taken from various biopsies—are sufficient. (*Compare* Pls. Supplemental Br. at 4, *with* Defs. Supplemental Br. at 4-5.) The court finds that Defendants have successfully shown that an autopsy will produce information pertinent to Mr. Jack's condition that is not obtainable through the available medical alternatives.

First, an autopsy may reveal potential co-morbidities. For example, Mr. Jack suffered a heart attack in April of 2017. (*See* Hanrahan Decl. (Dkt. # 226) ¶ 2, Ex. A at 2; Tuvim Decl. (Dkt. # 223) ¶ 2, Ex. A at 2, 5.) Defendants provide expert medical testimony from Dr. Stanley Geyer that "[e]ven where the cause of death is not in controversy, a complete autopsy may reveal potential co-morbidities—including but not limited to other malignancies, undiagnosed chronic health conditions or congenital health problems." (Geyer Decl. (Dkt. # 225) ¶ 8.) Dr. Geyer elaborates that "if an individual had a history of cardiac disease or cardiac episodes, examination of the heart and pericardium could provide further insight into whether any cardiac problem contributed to the individual's death." (*Id.*) Mr. Jack's medical records certainly lists the various ailments Mr. Jack suffered (*see id.* at 8), but that list does not and cannot identify whether those conditions are co-morbidities.

Mrs. Jack, in response, focuses on Dr. Geyer's testimony in previous, unrelated cases. Mrs. Jack points to the fact that Dr. Geyer has accepted the cause of death stated

on a decedent's death certificate in a previous case. (Pls. Supplemental Br. at 8.) However, she offers no information on whether there were similar co-morbidity questions in that case as there are here. (*See id.* at 7-9.) Thus, the court does not know whether questioning the cause of death was necessary in that case and thus cannot reach the conclusion Mrs. Jack puts forth—that Dr. Geyer, in a similar case where co-morbidity questions arose, was content to rely on a death certificate rather than an autopsy.

Second, an autopsy can obtain lung tissue to perform a tissue digestion and fiber burden analysis, which would ascertain the amount and types of asbestos fibers present in Mr. Jack's lungs. Such an analysis of the lungs "provides the most definitive, complete, comprehensive information available regarding the . . . asbestos fiber burden at the time of [Mr. Jack's] death." (Geyer Decl. ¶ 11.) For example, the tissue digestion and fiber burden analyses would reveal both the number and kind of asbestos fibers that have passed through Mr. Jack's lungs. (*Id.* ¶ 15.) These analyses could also provide evidence of exposure to naturally-occurring asbestiform minerals, which may have caused or contributed to the disease. (*Id.* ¶¶ 16-17.) Such information on the quantity and type of asbestos exposure is critical, especially where, as here, there are a large number of defendants with allegedly different types of asbestos in their products. (*See* Defs. Supplemental Br. at 5; Pls. Supplemental Br. at 9 ("[GPC] sold chrysotile asbestos containing products.").)

Defendants additionally provide affidavit evidence as to why the existing tissue samples, obtained from biopsies, are not adequate substitutes: (1) biopsy tissue is "not representative of the lung" as a whole; (2) it does not generally "reflect any disease

process present in other areas of the lung"; and (3) because it is tissue taken from the tumor, it "does not include tissue uninvolved in the tumor process." (Geyer Decl. ¶ 12.) Additionally, specific to this case, the biopsy tissue represents the pleura—membrane covering the outer surfaces of the lungs—but does not represent the parenchyma—the aerated tissue of the lung, where asbestos fibers are more likely to settle.[3] (*See id.* ¶¶ 13-14.) Without sufficient parenchyma tissue, it is unlikely that the existing biopsy tissue samples are able to provide the information that a more comprehensive analysis on the lung tissue can.

Mrs. Jack does not dispute what tissue digestion and fiber burden analyses may reveal, nor does she contend that such analyses can be done on the existing biopsy tissue samples. (*See generally* Pls. Supplemental Br.) Instead, she again takes issue with Dr. Geyer's testimony in past cases. For example, Mrs. Jack notes that in past cases, Dr. Geyer has stated that he relies on clinical history or occupational history. (*Id.* at 5.) Mrs. Jack further notes that in the past, Dr. Geyer has been "perfectly happy to rely on the same kind of pathology report Defendants have in this case." (*Id.* at 6.) But every patient presents a distinct case. Courts have frowned upon the use of general evidence that is unconnected to the particular decedent and the specific circumstances before them. *See Belkow*, 1989 WL 56976, at *2-3. Therefore, although Dr. Geyer may not have needed more than a pathology report in previous instances, he attests in this case that he has

---

[3] Defendants concede that one sample taken during a biopsy does contain lung tissue. (*See* Defs. Supplemental Br. at 4.) But even this sample primarily consists of pleura or pleural tumor tissue and is only 0.25% of the lungs. (Geyer Decl. ¶ 13.)

reviewed Mr. Jack's available pathology studies and concludes that "an autopsy is the most medically reasonable method for determining [Mr. Jack's] physical condition at the time of death in this case." (Geyer Decl. ¶¶ 6, 9.)

The court does not take lightly Mrs. Jack's significant moral objections to having an autopsy done on her husband.[4] (*See* Jack Decl. (Dkt. # 227-1) ¶ 1); *Certain Asbestos II*, 113 F.R.D. at 614. Mrs. Jack attests that an autopsy is not something Mr. Jack would have wanted (Jack Decl. ¶ 2) and that she wishes to "preserve [Mr. Jack's] last vestige of dignity" by burying "his ashes with his mother and father" (*id.* ¶ 5). The court takes these objections into consideration but concludes that they do not outweigh the Defendants' showing that an autopsy is the most medically reasonable option, as it can reveal information that is both pertinent to the case and unobtainable through the currently available medical alternatives. Because Defendants have successfully demonstrated that Mr. Jack's physical condition was in controversy and shown good cause to perform an autopsy at this time, the court grants Defendants' motion to preserve evidence per the requirements discussed below.

### C. Examination Details

Pursuant to Rule 35(a)(2), the court must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it. Fed. R. Civ. P. 35(a)(2). The court has previously identified a neutral,

---

[4] As Mrs. Jack's counsel concedes, he has "inartfully attempted to explain what Mrs. Jack wishes to be communicated." (Pls. Supplemental Br. at 5 n.4.) Thus, the court relies on Mrs. Jack's affidavit, and not counsel's shifting representations made during the two telephonic conferences, to characterize Mrs. Jack's objections.

third-party examiner, Dr. Carl Wigren, who is willing to travel to the funeral home selected by the Jack family to perform the examination. Dr. Wigren's information may be obtained from the Courtroom Deputy. Mrs. Jack, GPC, and the joining defendants may, if they wish, have counsel present, and GPC will bear the cost of the autopsy. (*See* Defs. Supplemental Br. at 8.) Any information gathered from the examination will be made available to all parties involved in the suit.

The court further orders Mrs. Jack and GPC to contact Dr. Wigren, confer amongst themselves, and provide the court with a joint statement confirming the final details of the examination, such as the date, time, place, scope of the examination, and other conditions applicable to the circumstances presented. In the case of any disagreement, the parties are encouraged to contact the court by phone so that the court can resolve any issues promptly and allow Mrs. Jack to cremate her husband and bury his ashes. After receiving the joint statement, the court will issue a further order with those details, as is required under Rule 35(a)(2).

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to preserve evidence (Dkt. # 207) and ORDERS parties to confer and submit a joint statement confirming the details of the examination.

Dated this 23 day of October, 2017.

JAMES L. ROBART
United States District Judge

ORDER - 11