1                      HONORABLE JAMES L. ROBART

2

3

4

5

6

7             UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

| | |
|---|---|
| 9  LESLIE JACK, individually and as | **Civil No.  2:17-cv-00537-JLR** |
| 10  Personal Representative of PATRICK JACK; DAVID JACK, individually, | **DEFENDANT FORD MOTOR COMPANY'S TRIAL BRIEF** |
| 11                  Plaintiffs, | |
| 12                  v. | |
| 13  BORG-WARNER MORSE TEC LLC, et al., | |
| 14                 Defendants. | |
| 15 | |

16                    **I.  INTRODUCTION**

17       At the age of 81, Patrick Jack passed away from mesothelioma that plaintiffs

18  allege was caused by asbestos exposure.  His widow, Leslie Jack, who married Mr.

19  Jack only after his mesothelioma diagnosis, and his son, David Jack, seek

20  compensatory damages for wrongful death, and damages on behalf of Mr. Jack's

21  estate.

22       It is undisputed that Mr. Jack was a Navy reservist from 1954 through 1961, and

23  spent a year on active duty in 1961 aboard the U.S.S. Brannon.  While aboard that ship

24  he, himself, removed amphibole asbestos-containing insulation that covered, among

25  other things, pipes and valves on the ship.  He was also present, during his eight years

26

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1   in training and on active duty, on a number of occasions when installation and/or

2   removal of amphibole asbestos-containing insulation was being performed by others.

3        It is further undisputed that from 1968 through 1993, Mr. Jack worked at Puget

4   Sound Naval Shipyard (PSNS), first as a machinist and then as a nuclear inspector.  He

5   encountered asbestos-containing pipe insulation during this work.

6        The type of insulation used at these locations was of the highly friable, highly

7   toxic amphibole variety that has been well-documented to cause asbestos-related

8   diseases like mesothelioma.

9        Despite the evidence of exposure to amphibole-asbestos-containing products in

10   the Navy and at PSNS, plaintiffs contend that the true cause of Mr. Jack's

11   mesothelioma was his intermittent work with chrysotile-asbestos-containing automotive

12   friction products distributed by Ford Motor Company.  At trial, because no Navy and

13   PSNS defendants remain in the case, plaintiffs will minimize Mr. Jack's Navy and PSNS

14   exposures and over emphasize Mr. Jack's alleged Ford-related exposures.

15        Ford will show, however, that the only cause of Mr. Jack's mesothelioma was his

16   amphibole asbestos exposure in the Navy and at PSNS. Mr. Jack's de minimis

17   exposure to chrysotile asbestos from Ford products—if any even occurred—had nothing

18   to do with it.  According even to plaintiffs' expert Dr. Carl Brodkin, de minimis exposures

19   do not contribute to disease.  Indeed, Ford's experts will explain that automotive friction

20   products have never been scientifically shown to cause mesothelioma, even in people

21   who worked with them full-time their entire working lives.  As a result, Ford is entitled to

22   a defense verdict.

23                       **II.  CLAIMED EXPOSURE HISTORY INVOLVING FORD**

24        Under *Simonetta v. Viad Corp.*, 165 Wash.2d 341, 197 P.3d 127 (2008), and

25   *Braaten v. Saberhagen Holdings*, 165 Wash.2d 373, 198 P.3d 493 (2008), Ford is

26

DEFENDANT FORD MOTOR
COMPANY'S TRIAL BRIEF
2:17-cv-00537JLR

2

fucile & reising LLP
portland union station
800 nw 6ᵗʰ ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1   responsible only for Ford "original equipment"—i.e., products manufactured or sold by

2   Ford, not products manufactured or sold by others even if they were used with a Ford

3   vehicle. The evidence at trial will show that Mr. Jack's work with asbestos-containing

4   Ford original equipment was minimal.

5       From 1962 to 1964, Mr. Jack co-owned and worked at Dexter Avenue Repair

6   Shop, a neighborhood garage in Seattle.  Mr. Jack did not have any significant

7   exposure to asbestos from any Ford original equipment *clutches* at Dexter.  (Dkt. 706,

8   at p. 33.)  Further, as Ford will show at trial, Mr. Jack also had no exposure to Ford

9   original equipment *brakes* at Dexter; Mr. Jack could not recall whether he ever

10  purchased Ford brakes for use there.  Accordingly, the evidence does not support a jury

11  finding of any exposure to asbestos-containing Ford original equipment at Dexter.

12      Mr. Jack left Dexter in 1964 and moved to Portland.  For the next four years, he

13  worked part-time for a towing company called Apex, where he periodically serviced two

14  Ford tow trucks.  Plaintiffs allege that Mr. Jack did two four-wheel brake replacements

15  on each tow truck, two to three clutch replacements on each tow truck, and a "couple" of

16  engine overhauls on each that involved gasket replacements, and that he obtained the

17  replacement parts for the trucks at a local Ford dealer.  At trial, even if plaintiffs can

18  establish that Mr. Jack purchased Ford original equipment replacement parts for the tow

19  trucks, Ford will show that any work with such new parts resulted in non-existent or de

20  minimis asbestos exposure, and was not a cause of his mesothelioma.

21      Mr. Jack allegedly performed personal automotive work with Ford products on

22  three occasions over his lifetime: (1) at least one brake installation on one of his two

23  Pontiac race cars (Dkt. 706 at 36); (2) a "complete rebuild" of a 1964 Ford Ranchero

24  with 160,000 miles on it, and (3) removing two rear drum brake shoes from a 1984 Ford

25  Mustang.  As for the Pontiacs, Ford will show that plaintiffs have no proof that Mr. Jack

26  used any Ford products on them.  As for the Mustang and Ranchero, Ford will show at

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1    trial that David Jack's testimony—that the friction products his father removed from

2    these vehicles originated from Ford—is speculative and not credible.  And again, Ford

3    will show that this work would have resulted in de minimis, if any, asbestos exposure

4    and was not a cause of Mr. Jack's disease.

5                    **III.  LEGAL ISSUES LIKELY TO ARISE AT TRIAL**

6    A.      Evidence purporting to establish Ford's knowledge post-dating 1980 is irrelevant.

7             For the most part, plaintiffs' allegations against Ford date from the 1962-1968

8    timeframe.  Because Ford's knowledge is relevant only to negligence and failure to warn

9    theories of liability, evidence of what Ford knew or should have known based on

10   materials from the 1980s, such as the 1986 Gold Book and Don't Blow It video, are

11   irrelevant **because Ford issued box warnings starting in 1980** stating "DANGER

12   CONTAINS ASBESTOS DUST AVOID CREATING DUST CANCER AND LUNG

13   DISEASE HAZARD."  Evidence suggesting generally that Ford should have known that

14   brake dust can be hazardous and needed to warn about it serves no purpose after 1980

15   because Ford was already issuing warnings.[1]

16            For the same reason, if the court permits plaintiffs to argue for a post-sale duty to

17   warn under *Lockwood v. AC&S, Inc.*, Ford satisfied that duty in 1980 when it issued a

18   warning.  109 Wash.2d 235, 260-61, 744 P.2d 605 (1987) (A product seller may have a

19   post-sale duty to warn "where a person's susceptibility to the danger of a product

20

_____

21            [1] In denying Ford's Motions in Limine 1 and 7, to exclude the "Don't Blow It"
     video and to limit evidence of Ford's knowledge after 1980, the Court appears to have
22   believed Ford's motion was based on Ford's summary judgment argument that plaintiffs
     lacked evidence of Mr. Jack's use of Ford products in the 1980s.  *E.g.* Transcript of 9-
23   17-2018 Pretrial Conference at 53:7-14; 55:15-23.  But the motions in limine were
     premised, not on Mr. Jack's alleged exposure to asbestos from Ford products in the
24   1980s, but on the warning label affixed to Ford products beginning in 1980.  Dkt. 660 at
     17:19-23.  Thus, the Court has not actually resolved the issue presented by Ford's
25   Motions in Limine 1 and 7 -- whether Ford's purported knowledge after 1980 is relevant
     to any issue in this failure to warn case.
26

DEFENDANT FORD MOTOR
COMPANY'S TRIAL BRIEF
2:17-cv-00537JLR

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1   continues after that person's direct exposure to the product has ceased, the

2   manufacturer still has a duty after exposure to exercise reasonable care to warn the

3   person of known dangers, if the warning could help to prevent or lessen the harm.").  So

4   the only evidence relevant to what Ford should have known and warned about, but did

5   not, would date from 1964 through 1980.  To be sure, Ford disputes any post-sale duty

6   to warn applies here given plaintiffs' theory that any "identified exposure" causes

7   mesothelioma, which is inconsistent with any argument that a retroactive warning could

8   have done anything to lessen the alleged harm. But if the court disagrees, it should still

9   limit the evidence on that topic to pre-1980 information.

10   **B.     Any jury instructions on causation should provide that plaintiffs have to prove
    either (1) that exposure to Ford products was alone sufficient to cause Mr. Jack's**

11   **disease, even if he would have developed the disease anyway, or (2) that exposure to
    Ford's products was a "but for" cause of his disease.**

12

13          As the Ninth Circuit recognized in *In re Hanford Nuclear Reservation Litigation*,

14   534 F.3d 986, 1010-11 (9th Cir. 2007), Washington courts adhere strictly to the

15   proximate causation test that includes a but-for element (WPI 15.01) and "will depart

16   from the standard but-for causation instruction in favor of the substantial factor test only

17   in three rare circumstances: (1) the plaintiff was excusably ignorant of the identity of the

18   tortfeasor who caused his injury; (2) the plaintiff probably would have been injured

19   anyway, but lost a significant chance of avoiding the injury; or (3) the plaintiff has been

20   injured by multiple independent causes, each of which would have been sufficient to

21   cause the injury."

22          An example of the first scenario in which a plaintiff was allowed to rely on a

23   causation standard that did not require proof of but-for causation (because it would have

24   been impossible for the plaintiff to show but-for causation) is *Hue v. Farmboy Spray,*

25   *Inc.*, 127 Wash.2d 67, 896 P.2d 682 (1995). In *Hue*, plaintiffs claimed pesticides applied

26   on other properties drifted onto their property and damaged their crops.  Plaintiffs'

DEFENDANT FORD MOTOR
COMPANY'S TRIAL BRIEF
2:17-cv-00537JLR

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1   theory was that the pesticides formed one homogeneous "toxic cloud" that caused their

2   injury and that they should not be required to prove any particular defendant was a "but

3   for" cause because that would be impossible and let all the defendants off the hook. The

4   Washington Supreme Court held the trial court correctly instructed the jury under the

5   circumstances that plaintiffs had to prove "that a particular defendant applied the

6   pesticides at issue, a portion of an application drifted and entered Badger Canyon and

7   'the target drift of *the pesticides* was a proximate cause of damage to an individual . . .

8   plaintiff's property or crops within a particular year."  *Hue,* 127 Wash.2d at 91-92

9   (*quoting* Jury Instructions) (italics in original).

10      This case is not like *Hue.*  Here, there is no question that plaintiffs are perfectly

11  able to describe Ford's alleged particular contribution to a claimed "toxic cloud" of

12  asbestos dust to which Mr. Jack was allegedly exposed throughout his lifetime.  There

13  is no fairness-based reason to relieve them of having to show that Mr. Jack would not

14  have developed mesothelioma but for Ford's contribution, either standing alone or in

15  combination with other causes.  *See also Lockwood v. AC&S, Inc.*, 109 Wash.2d 235,

16  238, 245 n.6 (1987) (Plaintiff who was "employed continuously" for 20 years at same

17  shipyard entitled to the following jury instruction: "If you find two or more causes

18  combine to produce a single result, incapable of division on any logical or reasonable

19  basis, and each is a substantial factor in bringing about harm, each is charged with

20  responsibility for the harm.")

21      Plaintiffs will likely rely on *Mavroudis v. Pittsburgh-Corning Corp.*,  86 Wash.App.

22  22, 935 P.3d 684 (1997), to argue that *Hue's* causation test applies in asbestos cases

23  and under that test, all they must show is that Ford exposed Mr. Jack to asbestos and

24  that Mr. Jack's cumulative dose of asbestos was the proximate cause of his illness.  But

25  *Mavroudis* is actually an example of the third category of cases described by the Ninth

26  Circuit—independent, sufficient causes.  *Mavroudis* involved a former member of the

DEFENDANT FORD MOTOR
COMPANY'S TRIAL BRIEF
2:17-cv-00537JLR

6

fucile & reising LLP
portland union station
800 nw 6ᵗʰ ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1    United States Navy who developed mesothelioma. 86 Wash. App. at 26- 27. While in

2    the Navy, Mr. Mavroudis worked on the "conversion" of the U.S.S. Wright from 1957 to

3    1963 at Puget Sound Naval Shipyard. *Id.* At trial, plaintiff's expert testified that all of

4    plaintiff's exposure to amphibole asbestos at PSNS from 1957 to 1963 played a role in

5    causing the mesothelioma and, he could not say which asbestos exposures at PSNS

6    actually caused the disease. *Id.* Given that the disease was caused by amphibole

7    asbestos exposure, and in light of the inability to fix which particular asbestos exposure

8    caused mesothelioma, the trial court instructed the jury, "If you find that two or more

9    causes have combined to bring about an injury and any one of them operating alone

10   would have been sufficient to cause the injury, each cause is considered to be a

11   proximate cause of the injury if it is a substantial factor in bringing it about, even though

12   the result would have occurred without it. A substantial factor is an important or material

13   factor and not one that is insignificant." *Id.* at 28.

14          In affirming the verdict in favor of the plaintiff, the Court of Appeals relied heavily

15   on *Hue* in holding that a substantial factor rather than a but for instruction was properly

16   given.  But because the trial court in *Mavroudis* did not give an instruction based on *Hue*

17   and instead imposed a higher standard of alternative, sufficient causation, the Court of

18   Appeals did not need to reach whether *Hue* would apply in asbestos cases and

19   declined to do so.  *Mavroudis*, 86 Wash.App 33.  In avoiding the issue, the court noted

20   that applying a *Hue* standard would give rise to "persuasive" arguments that it would be

21   unfair to apply that standard without also applying some form of fault apportionment,

22   which is prohibited in asbestos cases under existing Washington Supreme Court

23   precedent. *Id.*, citing *Sofie v. Fibreboard Corp.,* 112 Wash.2d 636, 667–69.  Thus, while

24   *Mavroudis* suggests a but-for causation standard does not apply to asbestos cases, it

25   provides little guidance on what instruction should be given. But the instruction given

26

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1    must avoid the possibility of full joint and several liability for a defendant whose

2    contribution was neither necessary nor sufficient to bringing about the harm.

3         There is no case holding that the language in the Washington substantial factor

4    test for proximate causation is an appropriate instruction for asbestos cases.  The court

5    should **not** give an instruction following EPI 15.02 that the jury may find proximate

6    cause if exposure to a Ford product was a "substantial factor" "even though the result

7    would have occurred without" that exposure.  This is especially true in this case, which

8    involves distinct types of asbestos exposure at distinct worksites.

9         Here, Mr. Jack's exposures to Ford's products were not undifferentiated in time

10   and place from the Navy and PSNS exposures in a way that would render it unfair to

11   require plaintiffs to prove proximate causation as to Ford specifically.  Further, plaintiffs

12   will not contend Mr. Jack's exposure to asbestos from a Ford product *alone* was

13   sufficient to cause his disease.  They will contend Mr. Jack's exposure to Ford's

14   products *combined with* the Navy and PSNS exposures to cause his illness.  They are

15   also not entitled to an instruction that would permit the jury to find that exposure to

16   Ford's products was the proximate cause of Mr. Jack's disease even though exposure

17   to Ford's products was neither necessary nor sufficient to cause illness.

18        Accordingly, the court should instruct the jury using WPI 15.01—the standard

19   proximate cause test.  Alternatively, the court should instruct the jury using WPI 15.02,

20   but omit the "even if the result would have occurred without it" language, which is

21   appropriate only for cases of alternative sufficient causes, which this case is not.  Or,

22   along the same lines, the court could give an instruction like the one given in *Lockwood*.

23

24

25

26

DEFENDANT FORD MOTOR
COMPANY'S TRIAL BRIEF
2:17-cv-00537JLR

8

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1    Dated:   September 25, 2018.

2                                                    FUCILE & REISING LLP

3

4                                                  _____
                                                   s/ Daniel K. Reising
                                                   Mark J. Fucile, WSBA No. 23736
5                                                  mark@frllp.com
                                                   Daniel K. Reising, WSBA No. 41175
6                                                  dan@frllp.com
                                                   Portland Union Station
7                                                  800 NW 6th Ave., Suite 211
                                                   Portland, OR 97209
8                                                  Tel:  503.224.4895
                                                   Fax:  503.224.4332

9                                                  WHITEFORD TAYLOR PRESTON

10

11                                                 Harry S. Johnson
                                                   Admitted *Pro Hac Vice*
12                                                 7 St. Paul St.
                                                   Baltimore MD 21202
13                                                 Tel. 410.347.9444
                                                   Fax 410.223.4344

14                                                 Attorneys for Ford Motor Company

15

16

17

18

19

20

21

22

23

24

25

26

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332

1

**Certificate of Service**

2

***Jack v. Asbestos Corporation, Ltd., et al.***

3

     I hereby certify under penalty of perjury of the laws of the state of Washington

4

that I served the attached **DEFENDANT FORD MOTOR COMPANY'S TRIAL BRIEF**

5

on all counsel of record at the email addresses listed in the Court's ECF system.

6

     Dated:  September 25, 2018.

7

8

                s/ Daniel K. Reising
                Mark J. Fucile, WSBA No. 23736

9

                Mark@frllp.com
                Daniel K. Reising, WSBA No. 41175

10

                Dan@frllp.com
                Attorneys for Defendant

11

                Ford Motor Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page   1  -  CERTIFICATE OF SERVICE

fucile & reising LLP
portland union station
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4892 f 503.224.4332