1        HONORABLE JAMES L. ROBART

2

3

4

5

6                 UNITED STATES DISTRICT COURT
7              WESTERN DISTRICT OF WASHINGTON
                        AT SEATTLE
8
   LESLIE JACK, Individually and as Personal
9  Representative of the Estate of PATRICK        No.  2:17-cv-00537 JLR
   JACK; DAVID JACK, individually,
10                                                 PLAINTIFFS' TRIAL BRIEF
                              Plaintiffs,
11
12        v.

13 ASBESTOS CORPORATION LTD., et al.,

14                            Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

SCHROETER, GOLDMARK & BENDER
                                                     500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
                                                     Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    FACTUAL OVERVIEW ................................................................................. 1

    A.    Patrick Jack's Background ................................................................ 1

    B.    Diagnosis, Treatment, and Damages ............................................... 1

    C.    Asbestos Exposure History .............................................................. 2

        1.    Borg-Warner ........................................................................ 2

        2.    DCo ....................................................................................... 3

        3.    Ford Motor Company ........................................................... 4

    D.    Industry Knowledge and Failure to Warn ........................................ 5

II.    LEGAL FRAMEWORK .............................................................................. 6

    A.    Strict Product Liability ..................................................................... 6

        1.    Unreasonably Dangerous Product ....................................... 6

        2.    Design Defect ....................................................................... 7

        3.    Failure to Warn ................................................................... 8

        4.    Continuous Nature of Duty to Warn .................................... 9

    B.    Negligence ....................................................................................... 9

        1.    Duty to Warn ..................................................................... 11

        2.    Duty to Test ....................................................................... 12

    C.    Causation ........................................................................................ 12

    D.    Damages ......................................................................................... 13

III.    LEGAL ISSUES ....................................................................................... 14

    A.    Mr. Jack's Autopsy ....................................................................... 14

    B.    Jury Instructions At Beginning Of Trial ........................................ 15

    C.    Expert Reliance On The Welch Article .......................................... 15

    D.    Admissibility of Borg-Warner Corporate Representative
        Testimony ...................................................................................... 16

PLAINTIFFS' TRIAL BRIEF  – i
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

## TABLE OF AUTHORITIES

2

**Page(s)**

## Cases

3

*Allison v. Housing Authority,*
    118 Wn.2d 79, 821 P.2d 34 (1991) ............................................................... 12, 13

4

*Campbell v. ITE Imperial Corp.,*

5

    107 Wn. 2d 807, 733 P.2d 969 (1987) ............................................................... 8

6

*City of  Stanwood,*
    130 Wn.2d 726, 927 P.2d 240 (1996) ............................................................... 10

7

*Dartez v. Fibreboard Corp.,*

8

    765 F.2d 456 (5th Cir. 1985) ............................................................... 12

9

*Hansen v. Friend,*
    118 Wn.2d 476, 824 P.2d 483 (1992) ............................................................... 10

10

*Hoglund v. Raymark Industries,*
    50 Wn. App. 360, 749 P.2d 164 (1987) ............................................................... 8, 9

11

*In Re: Engle Progeny Cases Tobacco Litigation,*

12

    No. 2008CV025824, 2014 WL 3966177 (Fla. Cir. Ct. May 07, 2014) ............................................ 14

13

*Keller v. City of Spokane,*
    104 Wn. App. 545, 17 P.3d 661 (2001) ............................................................... 10

14

*King v. City of Seattle,*
    84 Wn.2d 239, 525 P.2d 228 (1974) ............................................................... 11

15

*Kisor v. Johns Manville Corp.,*

16

    783 F.2d 1337 (9th Cir. 1986) ............................................................... 8

17

*Koker v. Armstrong Cork, Inc.,*
    60 Wn. App. 466 (1991) ............................................................... 12

18

*Lamon v. McDonnell Douglas Corp.,*

19

    19 Wn. App. 515, 576 P.2d 426 (1978) , *aff'd and remanded,*
    91 Wn. 2d 345, 588 P.2d 1346 (1979) ............................................................... 7, 8

20

*Lettengarver v. Port of Edmunds,*

21

    40 Wn. App. 577, 699 P.2d 793 (1985) ............................................................... 10

22

*Little v. P.P.G. Industries,*
    92 Wn.2d 118, 594 P.2d 911 (1979) ............................................................... 8

23

*Lockwood v. A C & S, Inc.,*

24

    109 Wn.2d 235, 744 P.2d 605 (1987) ............................................................... 7, 9, 11, 12

25

*Meneely v. S. R. Smith, Inc.,*
    101 Wn. App. 845, 5 P.3d 49 (2000) ............................................................... 10

26

*N.K. v. Corp. of Presiding Bishop,*
    175 Wn. App. 517 (2013) ............................................................... 11

1

2    **Table of Authorities, continued**

3                                                                                                      **Page(s)**

4    *Palsgraf v. Long Island Railroad Co.*,
         162 NE 99 (N.Y. 1928) ................................................................................................ 10

5    *Rikstad v. Holmberg*,
         76 Wn.2d 265, 456 P.2d 355 (1969) ............................................................................ 11

6    *Seattle-First National Bank v. Tabert*,
7        86 Wn.2d 145, 542 P.2d 774 (1975) ........................................................................ 6, 7

8    *Transamerica Title Ins. Co. v. Johnson*,
         103 Wn.2d 409, 693 P.2d 697 (1985) .......................................................................... 10

9    *Young v. Key Pharmaceuticals*,
         130 Wn.2d 160, 922 P.2d 59 (1996) ............................................................................ 11
10

11   **Statutes**
     RCW 4.20.010 ....................................................................................................................... 13
12   RCW 4.20.020 ....................................................................................................................... 13
     RCW 4.20.046 ....................................................................................................................... 13
13   RCW 4.20.060 ....................................................................................................................... 13
     RCW 7.72.030(3) .................................................................................................................... 8
14

15   **Rules**
     Fed. R. Civ. P. 30(b)(6) ......................................................................................................... 16
16   FRE 403 ................................................................................................................................. 14
     FRE 703 ................................................................................................................................. 16
17   FRE 801(d)(2) ......................................................................................................................... 16
     FRE 803(18) ........................................................................................................................... 16
18

19
     **Other Authorities**
20   Restatement (Second) of Torts § 402A (1965) ...................................................................... 6
     WPI 31.01.01 ......................................................................................................................... 13
21   WPI 31.02.01 ......................................................................................................................... 13
     WPI 31.03.01 ......................................................................................................................... 13
22

23

24

25

26

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

# I.   FACTUAL OVERVIEW

## A.   Patrick Jack's Background

Patrick Jack died from malignant pleural mesothelioma at the age of 81 years old. Mr. Jack was a devoted family man who lived with Leslie Jack for 30 years before they were married in 2015 (prior to his diagnosis). Leslie's children refer to him as their father. He was an adoptive father to his only son, David Jack. He voluntarily enlisted in the U.S. Navy in 1954, served in active combat, and was honorably discharged. He was someone who was committed to helping other people throughout his life.

## B.   Diagnosis, Treatment, and Damages

Mr. Jack was diagnosed with malignant pleural mesothelioma in July 2016 at the age of 79. After his diagnosis he received various treatments, including radiation and chemotherapy, that were all unsuccessful. He ultimately required home hospice care and died of mesothelioma on October 15, 2017.

Mr. Jack had significant economic damages. He had medical expenses of $369,525.56. He lost retirement benefits for his life expectancy of 7.7 years in the amount of $234,090.78. This is not to mention his pain and suffering. He was healthy and active before his mesothelioma diagnosis, and suffered an extremely painful and terrible death from pleural mesothelioma. His wife, Leslie Jack, has also suffered enormous damages from the loss of her husband. Not only were they together for more than 30 years, but she has medical problems of her own that required her to depend on Mr. Jack for support before he got sick. Mr. Jack's son has also suffered emotional losses from the death of his father.

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## C.      Asbestos Exposure History

Mr. Jack worked on vehicles from the 1950s until 2014. He worked as a full-time professional auto mechanic at Dexter Avenue Auto Repair from 1962 to 1964. From 1964 to late 1967, Mr. Jack worked as a mechanic on large industrial mobile home tow trucks for Apex Mobile Home Towing. Mr. Jack did brake, clutch, and gasket work throughout his life. He worked on race cars, drag race cars, tractors, bulldozers, motorcycles, riding motors, stationary motors, pickup trucks, his own vehicles, and those of friends and family. Mr. Jack had a double bay garage where he worked on hundreds of his own vehicles.

### 1.      Borg-Warner

Mr. Jack had significant exposure to Borg-Warner asbestos clutches. He first started performing clutch work in the 1950s while in high school. The first clutch he recalls replacing was on his 1946 Chevrolet. The clutch he removed was manufactured by Borg & Beck, the  trade name for Borg-Warner's asbestos clutches. He worked with more Borg & Beck clutches in 1959 when he was drag racing with Pontiacs that came with Borg & Beck clutches. He did "a lot" of clutch work with Borg-Warner clutches at Dexter, including both installation and removal. He used compressed air to blow dust out from the Borg-Warner clutches. At Apex, he did four to six clutch jobs with Borg-Warner clutches on Ford tow trucks.

Mr. Jack performed at least eight to ten clutch jobs on friends' vehicles involving Borg-Warner clutches and he purchased and installed Borg-Warner brand clutch discs on his own vehicles, including his race cars. In addition to the vehicles he specifically remembered working with Borg Warner clutches on, there were "lots" of others he knows he worked on

PLAINTIFFS' TRIAL BRIEF – 2
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

throughout his life, but that he simply could not remember the exact make, model, and color. Numerous clutch discs and components were discovered in Mr. Jack's garage in 2017.

Borg-Warner sold asbestos clutches for 58 years starting in 1928. Borg-Warner clutches contained as much as 60% asbestos. All Borg-Warner clutches contained asbestos well into the 1980s, with two exceptions not relevant here. Borg-Warner supplied asbestos-containing clutches to Ford for use as original equipment manufacturer parts and as replacement parts. Borg-Warner's distribution of asbestos-containing clutches was so vast that it has admitted if a person were removing an original clutch from a Ford, Chrysler, or General Motors car between 1973 and 1981, there is a pretty good chance they were removing a Borg-Warner clutch. Borg-Warner's own study found that operations with its clutches caused substantial asbestos exposures that in most cases exceeded limits established by OSHA.

2.    DCo

Mr. Jack removed and replaced hundreds of automotive gaskets. He worked with Victor gaskets, manufactured by DCo, from 1957 to 2016. They were asbestos-containing until 1988. Even after that date, Mr. Jack ordered old asbestos-containing Victor gaskets for his old cars, which he continued to work on and with until 2016. Mr. Jack testified that Victor gaskets would get "baked on" to engines, and have to be removed with scrapers, wire brushes, and electric grinders. All of these tools were found in his garage in 2017. Mr. Jack also used compressed air to blow away the asbestos gasket debris.

Mr. Jack had an old box of Victor gaskets in his garage that were tested by Plaintiffs' expert Sean Fitzgerald and found to contain 25-60% chrysotile and tremolite asbestos. Mr. Jack's lymph tissue also contained chrysotile and tremolite. The lymph system carries

PLAINTIFFS' TRIAL BRIEF – 3
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

asbestos directly to the pleura, where Mr. Jack's mesothelioma developed. Both the tremolite and chrysotile asbestos in his lymph tissue were long (the chrysotile fiber was 19 microns long and the tremolite fiber was a little over 13 microns). Fibers this long are not found in background, so they had to come from a product. Victor advertises its gaskets, including its Victopac sheet gaskets, contain "long fibre asbestos." Used Victopac gaskets were found in Mr. Jack's garage.

Also, Victor's gaskets were manufactured with amosite asbestos from approximately 1955 to 1963. Mr. Jack worked as a professional auto mechanic with Victor gaskets from 1962 to 1964. Amosite fibers were found in his lungs.

### 3.     Ford Motor Company

Mr. Jack bought brakes, clutches, and gaskets from Ford throughout his life. He installed and removed Ford brakes on his 1960 and 1962 Pontiac race cars. He performed brake jobs on Ford cars of his and his family. He removed the original brakes from his 1984 Ford Mustang. Mr. Jack also performed the first brake and clutch work on a 1964 Ford Ranchero.

When Mr. Jack was an auto mechanic at Dexter in the 1960s, he purchased Ford-brand brakes and clutches from a Ford dealer. Mr. Jack repeatedly ground Ford asbestos brakes with an electronic arc grinding machine in an enclosed space at Dexter. He testified it was the dustiest thing he did in his entire life. At Apex, Mr. Jack did brake work, clutch work, and a couple engine overhauls on two Ford tow trucks. The owner of Apex was a "hardcore Ford man" who would not buy anything other than Ford products from the Ford dealer. Mr. Jack performed many clutch jobs on the Ford trucks. The clutches he removed from the trucks came from Ford. He also performed engine overhauls on the Ford trucks. He

PLAINTIFFS' TRIAL BRIEF – 4
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1    also did an engine job with gaskets that all came from Ford. He used 15 to 18 different

2    gaskets for each overhaul.

3        Ford's corporate representative testified that Ford sold asbestos brakes and clutches

4    for over 90 years, until 2001. *All* Ford brakes, with one exception, contained asbestos through

5    1983. Ford's corporate representative has agreed that "if an individual worked on or around

6    brakes on a Ford automobile prior to 1982, that those brakes would necessarily be made of

7    asbestos." In 1985, Ford told the EPA that most Ford cars and trucks produced between 1957

8    and 1985 *required* asbestos brakes.

9

10   **D.    Industry Knowledge and Failure to Warn**

11       Plaintiffs will present a few underlying themes that the jury should consider when

12   reviewing their case against each Defendant. First, each Defendant was in the business of

13   producing or selling asbestos-containing products – each over the course of years if not

14   decades. Borg-Warner and Dana both admit that they knew asbestos hurt people in the 1930s.

15   Ford, however, despite its vast corporate experience and knowledge, will present a defense

16   that it was not aware of the grave health hazards associated with asbestos until the early

17   1970s with the development of the Occupational Health and Safety Act ("OSHA").  Even if

18   this were the first date of knowledge, which is contested, each company continued to expose

19   Mr. Jack to asbestos from products without warnings for years. The purpose of OSHA was to

20   supplement the various state laws regulating workplace safety and to provide a federal

21   enforcement vehicle. OSHA's provisions are mandatory. As the manufacturers and sellers of

22   asbestos products, Defendants were put on notice of the harmful effects of breathing asbestos

23   dust, yet did not ever adequately warn consumers of the dangers of their asbestos products at

24   that time.

25

26

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Second, each Defendant has admitted knowledge of the hazards of asbestos well before the date of last exposure. While the evidence varies between each Defendant, there is evidence for each that the company had actual knowledge of asbestos hazards years before the exposures in this case ended.

Third, the medical and scientific literature over the years has confirmed that exposure to asbestos is hazardous and often deadly.  In 1930, Dr. Merewether, the Medical Inspector of Factories for the British Government, coauthored an official memorandum that outlined preventive measures and specifically identified asbestos-containing products – including asbestos-containing brake friction and gasket products – that generate hazardous dust in industrial applications. A plethora of medical literature warning of the hazards of asbestos followed. Had these Defendants tried to become aware of scientific literature available since at least the early 1930s, individuals such as Mr. Jack would have been spared fatal exposures.

## II.   LEGAL FRAMEWORK

Plaintiffs are pursuing claims for strict products liability under theories of design defect and failure to warn, as well as a claim for negligence. They are seeking damages under the survival and wrongful death statutes.

### A.    Strict Product Liability

#### 1.    <u>Unreasonably Dangerous Product</u>

Restatement (Second) of Torts § 402A (1965) provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user . . . ." In *Seattle-First National Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975), the Washington Supreme Court interpreted Section 402A as follows:

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

> The liability language of the section (402A) creates liability for a product in a defective condition which is unreasonably dangerous.
>
> If a product is unreasonably dangerous, it is necessarily defective. The plaintiff may, but should not be required to prove defectiveness as a separate matter . . . .
>
> Thus, we hold that liability is imposed under Section 402A if a product is not reasonably safe. That means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer . . . .

*Id.* at 150-154.

The leading Washington case on asbestos product liability law is *Lockwood v. A C & S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987). In the Appendix to *Lockwood*, the Supreme Court quotes jury instructions specifically setting forth an asbestos manufacturer's duty toward the users of its products:

> A manufacturer has a duty to supply products which are reasonably safe for use at the time they leave the manufacturer's control. A product is considered "not reasonably safe" or "unreasonably dangerous" if it is unsafe in a way or to an extent beyond that which an ordinary user would reasonably contemplate when using it in a foreseeable manner. In determining what an ordinary user would reasonably expect, you should consider the seriousness of the potential harm from the claimed defect, the cost and feasibility of eliminating or minimizing the risk, and such other factors as the nature of the product and the claimed defect indicate are appropriate.

*Id.* at 268.

## 2.    <u>Design Defect</u>

Under the common law strict product liability standard, the test for design defect is that "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Lamon v. McDonnell Douglas Corp.*, 19 Wn. App. 515, 520, 576 P.2d 426, 426 (1978), *aff'd and remanded*, 91 Wn. 2d 345, 588 P.2d

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

1346 (1979).[1] "The emphasis is upon the consumer's reasonable expectation of buying a product which is reasonably safe." *Id.* The consumer expectations test for design defect has been explained as follows:

> Thus, we hold that liability is imposed under section 402A if a product is not reasonably safe. This means that **it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer.** This evaluation of the product in terms of the reasonable expectations of the ordinary consumer allows the trier of the fact to take into account the intrinsic nature of the product. The purchaser of a Volkswagen cannot reasonably expect the same degree of safety as would the buyer of the much more expensive Cadillac. It must be borne in mind that we are dealing with a relative, not an absolute concept.

*Id.* (emphasis added).

### 3.   <u>Failure to Warn</u>

In *Little v. P.P.G. Industries*, 92 Wn.2d 118, 594 P.2d 911 (1979), the Supreme Court held that a product can be unreasonably dangerous if it is sold with inadequate warnings. The Supreme Court held that, in a strict product liability cause of action, the care that the manufacturer may have taken or the manufacturer's knowledge of the danger of its product is irrelevant. Rather, "[i]t is the adequacy of the warning which is given, or the necessity of such a warning, which must command the jury's attention, not the defendant's conduct." *Id.* at 121. Similarly, in *Kisor v. Johns Manville Corp.*, 783 F.2d 1337, 1341 (9th Cir. 1986), the Ninth Circuit held that, in an asbestos product liability case, the focus is on the warning and the reasonable expectations of the consumer.

A product seller's duty to warn is not delegable. *Campbell v. ITE Imperial Corp.*, 107 Wn. 2d 807, 814, 733 P.2d 969, 973 (1987); *Hoglund v. Raymark Industries,* 50 Wn. App.

---

[1] This "consumer expectations" test was retained by the Washington Product Liability Act, although the Act does not apply in this case because Plaintiffs' cause of action arose prior to 1981. RCW 7.72.030(3).

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

360, 371, 749 P.2d 164, 171 (1987) (in the strict liability context, "the duty to provide a non-defective product is non-delegable"). Although an employer might have failed to communicate product hazards to a worker, its negligence, if any, generally cannot relieve the manufacturer of liability for failure to warn. *Id.* As stated in Jury Instruction 13 given by then Superior Court Judge Robert S. Lasnik in *Mavroudis v. Owens Corning*, *et al.*, which applied both to "product liability and negligence": 'A manufacturer's duty to warn cannot be delegated'". A copy of the cover page of the instructions and that instruction is attached hereto as Ex. A.

### 4. Continuous Nature of Duty to Warn

Because of the unique characteristics of asbestos regarding latency and cumulative exposure, courts have imposed a continuing duty to warn regarding asbestos-containing products. In *Lockwood,* the Supreme Court held that where a person's susceptibility to the danger of a product continues after that person's direct exposure to the product has ceased, the manufacturer still has a duty after exposure to exercise reasonable care to warn the person of known dangers, if the warning could help to prevent or lessen the harm. 109 Wn.2d at 260. Specifically, the source of the asbestos product must take reasonable steps to inform the persons foreseeably exposed of the dangers of asbestos, even after the exposure has ended. *Id.* at 259. The *Lockwood* court held that this continuing duty applied because "health risks to persons exposed to asbestos continue after the exposure" and a person exposed "permanently carrie[s] in his lungs the asbestos fibers he had inhaled." *Id.*

### B. Negligence

Washington courts have defined duty as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."

PLAINTIFFS' TRIAL BRIEF – 9
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 413, 693 P.2d 697 (1985) (quoting

Prosser on Torts § 53 (3d Ed. 1964)). Ultimately, the existence of a duty turns upon the

foreseeability of the risk created by a defendant. Washington has long relied on the seminal

opinion of Justice Cardozo in *Palsgraf v. Long Island Railroad Co.*, 162 NE 99 (N.Y. 1928),

that if the conduct of the actor does not involve a foreseeable risk of harm to the person

injured, he owes no duty to that person. *City of  Stanwood*, 130 Wn.2d 726, 733, 927 P.2d

240 (1996) (citing W. Page Keeton et al., *Prosser and Keeton on Torts* § 31, at 170 (5th ed.

1984)). The jury's function is to decide the foreseeable range of danger, thereby establishing

limits for the scope of the duty that is owed by a defendant to a Plaintiff.  *Lettengarver v.*

*Port of Edmunds*, 40 Wn. App. 577, 699 P.2d 793 (1985); *see also Hansen v. Friend*, 118

Wn.2d 476, 824 P.2d 483 (1992) (whether duty was owed to minor depends upon

foreseeability of harm).

Once the initial determination of legal duty is made, the other three elements of

negligence, breach, proximate cause, and injury (damages), are questions for the jury. *Keller*

*v. City of Spokane*, 104 Wn. App. 545, 17 P.3d 661 (2001). For conduct to be negligent, it

must be unreasonable in light of a recognizable danger. *Boding v. City of  Stanwood*, 130

Wn.2d 726, 733, 927 P.2d 240 (1996) (citing W. Page Keeton et al., *Prosser and Keeton on*

*Torts* § 31, at 170 (5th ed. 1984)).  *See, e.g., Meneely v. S. R. Smith, Inc.*, 101 Wn. App. 845,

5 P.3d 49 (2000) (trial court properly ruled that trade association owed ultimate consumer of

pool equipment a duty to use reasonable care in adopting safety standards; harm to consumer

was foreseeable).

1

### 1.   <u>Duty to Warn</u>

Over the years, Washington Courts have repeatedly affirmed that product manufacturers sued on theories of negligence do have a duty to warn of hazards associated with their products.  In each instance, the Courts have made clear that the focus must be on the defendant manufacturer's conduct. In 1996, the Washington Supreme Court linked the duty to warn to "the actions of a reasonably prudent manufacturer. In a negligence action the focus is on the conduct of the manufacturer." *Young v. Key Pharmaceuticals*, 130 Wn.2d 160, 178, 922 P.2d 59 (1996). Accordingly, it held that in a negligence case "the duty to warn arises when a manufacturer becomes aware or should have become aware of dangerous aspects of one of its products." *Id.*

A defendant owes a duty to exercise reasonable care to avoid foreseeable injuries. *Lockwood*, 109 Wn.2d at 252; *Rikstad v. Holmberg*, 76 Wn.2d 265, 269, 456 P.2d 355 (1969). Importantly, "[l]iability is not predicated upon the ability to foresee the exact manner in which the injury may be sustained." *King v. City of Seattle*, 84 Wn.2d 239, 248, 525 P.2d 228, 233 (1974). Rather, a risk is foreseeable if it merely falls within the "general field of danger which should have been anticipated" by the defendant. *Rikstad,* 76 Wn.2d at 269. That the particular mode, method, or cause of harm was not foreseeable does not relieve a tortfeasor from liability so long as the *general* nature of the harm was foreseeable. *King*, 84 Wn.2d at 248. Moreover, the foreseeability inquiry cannot be made in a vacuum, and depends in part on the defendant's circumstances and position, as well as the defendant's actual knowledge. *Id. See also N.K. v. Corp. of Presiding Bishop*, 175 Wn. App. 517, 530-31 (2013).

PLAINTIFFS' TRIAL BRIEF – 11
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

For liability to attach, the law simply requires that the jury find that Mr. Jack's mesothelioma was within the "field of danger" defendant should have foreseen.

### 2.   Duty to Test

In *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 478 (1991), the court cited cases from federal and other state jurisdictions to support the fact that a duty to inspect and test a product exists:

> *Borel* holds all manufacturers to the knowledge and skill of an expert. They are obliged to keep abreast of any scientific discoveries and are presumed to know the results of all such advances. Moreover, they each bear the duty to fully test their products to uncover all scientifically discoverable dangers before the products are sold. The actual knowledge of an individual manufacturer is not the issue. If the dangers of asbestos were known to Johns-Manville at the time of Dartez's exposure, then the same risks were scientifically discoverable by other asbestos corporations. Therefore, the testimony of the medical director of the industry's largest member is relevant to plaintiff's attempt to meet the evidentiary burden defined in *Borel*.

*Id.* at 478 (quoting *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 461 (5th Cir. 1985)).

### C.   Causation

In *Lockwood*, the trial court gave a "substantial factor" proximate cause instruction: "If you find two or more causes combined to produce a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about harm, each is charged with responsibility for the harm." 109 Wn.2d at 268. In *Allison v. Housing Authority*, 118 Wn.2d 79, 821 P.2d 34 (1991), the court adopted a substantial factor test with regard to employment discrimination and quoted from a law review article stating "the 'substantial factor' test is generally applied in the multiple causation cases. This test states that a defendant is liable for a plaintiff's injury, if the defendant's conduct was a substantial factor in bringing about the injury, even though other causes may have contributed to it." 118 Wn.2d at 93-94. The court also quoted from Prosser and Keaton discussing the application of

the "substantial factor" test as a substitute for "but for" causation where multiple events have caused the tort. *Id.*

In a typical asbestos case, including this one, there are a number of manufacturers who made and distributed asbestos-containing products to which the plaintiff was exposed. For this reason, in recent years, almost all trial courts in counsel's experience which have dealt with proximate cause in the asbestos disease context have utilized a substantial factor instruction.

**D.    Damages**

As the personal representative of Mr. Jack's estate, Mrs. Jack maintains this wrongful death action. RCW 4.20.010. This action is for the benefit of Mrs. Jack, as his widow, as well as David Jack, his son. RCW 4.20.020. Mr. Jack's family may recover past and future economic damages for the benefits of value Mr. Jack would have provided to them if he had lived, including money, goods, and services. Washington Pattern Jury Instructions-Civil (WPI) 31.02.01; WPI 31.03.01. Mrs. Jack may recover for loss of marital consortium, including emotional support, love, affection, care, services, companionship, including sexual companionship, as well as assistance from one spouse to the other. WPI 31.02.01. David Jack may recover noneconomic damages for what Mr. Jack would have been expected to contribute to him in the way of love, care, companionship, and guidance. WPI 31.03.01.

Mr. Jack's claims against Defendants survive to Mrs. Jack, as the representative of his estate. RCW 4.20.046; RCW 4.20.060. She is entitled to recover economic damages such as Mr. Jack's medical expenses, funeral costs, and lost wages, as well as noneconomic damages for pain, suffering, anxiety, emotional distress, humiliation, and fear experienced by Mr. Jack before his death. *Id.*; WPI 31.01.01.

PLAINTIFFS' TRIAL BRIEF  – 13
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III.   LEGAL ISSUES

**A.       Mr. Jack's Autopsy**

Plaintiffs ask the Court to reconsider and allow the jury to be informed about the circumstances surrounding the autopsy of Mr. Jack. First, it is critically important that the jury not be allowed to assume that Mrs. Jack requested the autopsy as part of her efforts in bringing this lawsuit. This would not only be inaccurate, it would be extremely prejudicial. FRE 403. Juries have awarded zero damages in cases in which they were informed that a widow asked for an autopsy of her husband. *See In Re: Engle Progeny Cases Tobacco Litigation*, No. 2008CV025824, 2014 WL 3966177, at *1, *4 (Fla. Cir. Ct. May 07, 2014) (considering a plaintiff's motion for new trial when a jury found RJ Reynolds at fault for her husband's lung cancer death but awarded no damages).

Plaintiffs do not intend to present this issue in a way that portrays Defendants in a negative light or encourages the jury to decide the case on an improper basis. But the fact that Borg-Warner is concerned about that highlights how prejudicial it would be for the jury to assume Mrs. Jack wanted her husband's remains to be examined for evidence in this case. It would be natural for jurors to assume that only the decedent's family could agree to the autopsy and to then draw unfair conclusions about Mrs. Jack's character and motives.

The jury may also assume that the autopsy was requested by Mrs. Jack because asbestos fibers were found in Mr. Jack's tissue and this evidence is relied on by Plaintiffs and their experts. The fact that Defendants requested the autopsy is extremely relevant to the weight to be given to the autopsy findings. Because Defendants plan to minimize the significance of those findings, the jury should be aware that Defendants asked for them. It would be misleading and unfair to allow Defendants to attack the autopsy results without

PLAINTIFFS' TRIAL BRIEF  – 14
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

putting those results in their proper context as a product of Defendants' request, not Plaintiffs'.

Therefore, at a minimum, the jury should be informed that the autopsy was ordered by the Court, not something that Mrs. Jack voluntarily requested. The Court should go further, however, and allow the jury to be informed that it was Defendants that requested the autopsy so that they can evaluate the results with that context in mind.

**B.     Jury Instructions At Beginning Of Trial**

Plaintiffs request that, prior to the start of trial, the jury be given a general overview of all the legal standards to be applied in this case, including the law on negligence, strict products liability, causation, and damages. If the jury is given a causation instruction, standing alone, that will mislead the jury about the relative importance of causation in relation to the other issues to be decided in the case. A more comprehensive instruction would avoid the danger of confusing and misleading the jury about the legal standards they are to apply to Plaintiffs' claims.

**C.     Expert Reliance On The Welch Article**

In accordance with the Court's ruling, Plaintiffs do not intend to offer the Welch article as an exhibit at trial. Plaintiffs' experts have relied on this article, however, and need to be able to discuss why the article is so important to understanding the epidemiology regarding mesothelioma and asbestos brakes. More importantly, however, is that Defendants have based their causation defense on the epidemiological work of Dr. Kay Teschke, one of the signatories to the Welch article. Defendants will give a detailed expert presentation of Dr. Teschke's work and claim it supports their position that asbestos from brakes can never cause or contribute to mesothelioma. But Dr. Teschke specifically and unequivocally says they are

PLAINTIFFS' TRIAL BRIEF – 15
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

wrong and rejects Defendants' misinterpretation of her epidemiological work. If plaintiffs are unable to show the jury that Dr. Teschke signed the Welch article, the jury will be misled into believing that Ms. Teschke and her work support Defendants' causation defense. They do not.

The Welch article falls under the learned treatise exception to the hearsay rule because it is relied on by Plaintiffs' experts. FRE 803(18). It will be relied on during direct examination and has been established as reliable authority. Further, even if it were inadmissible hearsay, experts may rely on hearsay. Plaintiffs' experts should therefore be permitted to discuss the article because of its high probative value in assisting the jury in understanding the problems with the brake epidemiology at the core of Defendants' causation defense. FRE 703. The jury will be asked to adjudicate this key dispute about the reliability and significance of the brake epidemiology, but without the Welch article it will not have all available information in evaluating the parties' positions. Plaintiffs therefore ask that their experts be permitted to discuss the findings and conclusions of the Welch article.

**D.    Admissibility of Borg-Warner Corporate Representative Testimony**

Plaintiffs ask the Court to reconsider its ruling on the admissibility of the testimony of Borg-Warner's corporate representative, Louis Merz. When Mr. Merz stated there was a good chance a clutch removed from a GM vehicle in the 1970s was Borg-Warner, he was speaking for the company as its designated 30(b)(6). Fed. R. Civ. P. 30(b)(6). His statement is therefore not hearsay because it is the admission of a party opponent. FRE 801(d)(2).

The reason the statement is significant is Mr. Jack did a lot of work on Pontiac cars, made by GM, in the 1970s. Mr. Merz's statements therefore provides important evidence that Mr. Jack was removing Borg-Warner clutches from those Pontiacs. Plaintiffs understand the

1   court's ruling and will not seek to use the party admission to make a commentary about the

2   brand of clutches found in Mr. Jack's garage.

3   DATED this 25th day of September, 2018.

4

5                                        SCHROETER, GOLDMARK & BENDER

6                                        *s/ Thomas J. Breen*
                                         THOMAS J. BREEN, WSBA #34574
                                         810 Third Avenue, Suite 500
7                                        Seattle, WA  98104
                                         Phone: (206) 622-8000
8                                        breen@sgb-law.com ~ garrett@sgb-law.com
                                         houser@sgb-law.com ~ mclafferty@sgb-law.com
9

10                                       and

11                                       DEAN OMAR BRANHAM, LLP

12                                       *s/ Benjamin H. Adams*
                                         Benjamin H. Adams (*Pro Hac Vice*)
13                                       CA Bar No. 272909
                                         302 N. Market St., Suite 300
14                                       Dallas, TX 75219
                                         badams@dobllp.com
15

16                                       *Counsel for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

# CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2018, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Allen Eraut    aeraut@rizzopc.com, recordsmanagement@rizzopc.com

Andrew Gordon Yates    yatesa@lanepowell.com, docketing-sea@lanepowell.com, mitchells@lanepowell.com

Barry Neal Mesher    bnm@bnmesherlaw.com

Benjamin H. Adams    badams@dobllp.com, dsmith-hogan@dobllp.com, jjohnson@dobllp.com

Brendan Hanrahan    brendan.hanrahan@bullivant.com

Carrie S Lin    clin@mgmlaw.com

Charles W Branham , III    tbranham@dobllp.com, jjohnson@dobllp.com

Chris Robert Youtz    chris@sylaw.com, matt@sylaw.com, stacy@sylaw.com, theresa@sylaw.com

Christopher S Marks    cmarks@tktrial.com, asbestos.service@tktrial.com, mtiegen@tktrial.com

Claude Bosworth    cbosworth@rizzopc.com, recordsmanagement@rizzopc.com

Daniel K. Reising    dan@frllp.com, service@frllp.com, signe@frllp.com

Diane J. Kero    dkero@gth-law.com, service@gth-law.com

Elizabeth Jean McLafferty    mclafferty@sgb-law.com, sgbasbestos@sgb-law.com

Erin P Fraser    efraser@tktrial.com, mtiegen@tktrial.com

James Edward Horne    jhorne@gth-law.com, imoservice@gth-law.com, kcalkins@gth-law.com

Jeanne F Loftis    jeanne.loftis@bullivant.com, alicia.soine@bullivant.com, Asbestos-pdx@bullivant.com, portlanddocketing@bullivant.com, stephanie.wilken@bullivant.com

Jeffrey M Odom    odomj@lanepowell.com, carchanoh@lanepowell.com, carrington-dahlk@lanepowell.com, docketing-sea@lanepowell.com

PLAINTIFFS' TRIAL BRIEF – 18
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2 John G Goller     jgoller@vonbriesen.com, jmitten@vonbriesen.com,
tdahms@vonbriesen.com

3
Jospeh S Pevsner     Jospeh.Pevsner@tklaw.com
4
Katherine A. Lawler     katherine.lawler@nelsonmullins.com,
5 shemeka.eldridge@nelsonmullins.com

6 Katherine M. Steele     Asbestos@bullivant.com, freida.mason@bullivant.com

7 Kevin J Craig     kcraig@gordonrees.com, akendrick@grsm.com

8
Kristin M Houser     houser@sgb-law.com, oneil@sgb-law.com, sgbasbestos@sgb-law.com
9
Kristine E Kruger     kkruger@perkinscoie.com, cboshell@perkinscoie.com,
10 docketpor@perkinscoie.com, HW_Asbestos_Sea@perkinscoie.com,
11 kristinekruger@gmail.com

12 Lisa W Shirley     LShirley@dobllp.com, dsmith-hogan@dobllp.com

13 Lucas W.H. Garrett     garrett@sgb-law.com, sgbasbestos@sgb-law.com

14 Malika Johnson     mjohnson@tktrial.com, mtiegen@tktrial.com

15 Marc Marshall Carlton     marc.carlton@lewisbrisbois.com, Seattle-
16 Asbestos@lewisbrisbois.com, stacey.miller@lewisbrisbois.com

17 Mark B Tuvim     mtuvim@gordonrees.com, akendrick@gordonrees.com,
18 seaasbestos@grsm.com

19 Mark J Fucile     mark@frllp.com, service@frllp.com, signe@frllp.com

20 Mary P Gaston     mgaston@perkinscoie.com, docketsea@perkinscoie.com,
21 HW_Asbestos_SEA@perkinscoie.com, jstarr@perkinscoie.com

22 Michael Edward Ricketts     mricketts@gth-law.com, cwallace@gth-law.com,
imoservice@gth-law.com, kcalkins@gth-law.com

23
Michael Mackenzie Brown     mac.brown@bullivant.com, Freida.Mason@bullivant.com
24
R Thomas Radcliffe     tradcliffe@dehay.com, mktippins@dehay.com
25

26 Rachel Tallon Reynolds     asbestos@bullivant.com, elizabeth.pina@bullivant.com,
racheltallon@gmail.com, tonyha.davies@bullivant.com

PLAINTIFFS' TRIAL BRIEF – 19
(Case No. 2:17-cv-00537-JLR)

1  Randy J Aliment      randy.aliment@lewisbrisbois.com, annie.kliemann@lewisbrisbois.com

2  Richard D Ross      rross@bbllaw.com, epowell@bbllaw.com, mmadderra@bbllaw.com

3  Richard G Gawlowski      gawlowski@wscd.com, ossenkop@wscd.com, reyes@wscd.com

4
   Robert H Berkes      rberkes@bcrslaw.com
5
   Ronald C Gardner      rgardner@gandtlawfirm.com, khensley@gandtlawfirm.com
6
7  Ryan T Moore      rmoore@bcrslaw.com, achohlis@bcrslaw.com, cbee@bcrslaw.com,
   nlevonyan@bcrslaw.com
8
   Shaun Mary Morgan      smorgan@rizzopc.com, recordsmanagement@rizzopc.com
9
10  Thomas J. Breen      breen@sgb-law.com, sgbasbestos@sgb-law.com

11  Tim D. Wackerbarth      wackerbartht@lanepowell.com, docketing-sea@lanepowell.com,
    mitchells@lanepowell.com, wallg@lanepowell.com
12
    Trevor J. Mohr      tmohr@gordonrees.com, seaasbestos@gordonrees.com
13
14  Viiu Spangler Khare      vspanglerkhare@bcrslaw.com, rcastellanos@bcrslaw.com,
    tmatsumoto@bcrslaw.com
15
    William D Harvard      WDHarvard@ewhlaw.com, kacook@ewhlaw.com
16
17  William Joel Rutzick      rutzick@sgb-law.com, jones@sgb-law.com, liberio@sgb-law.com,
    ross@sgb-law.com, scrawford@sgb-law.com, ylitalo@sgb-law.com
18
          DATED: September 25,  2018, at Seattle, Washington
19
                                    By: s/ Cameron Colbo
20                                  Cameron Colbo, Legal Assistant
                                    Schroeter, Goldmark & Bender
21                                  810 Third Avenue, Suite 500
                                    Seattle, WA 98104
22                                  Phone: (206) 622-8000
                                    colbo@sgb-law.com
23

24

25

26

PLAINTIFFS' TRIAL BRIEF  – 20
(Case No. 2:17-cv-00537-JLR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305