1    Richard D. Ross, WSBA #34502                    The Honorable James L. Robart
     Michael J. Madderra, WSBA #48169
2    Bennett Bigelow & Leedom, P.S.
     601 Union Street, Suite 1500
3    Seattle, WA  98101-1363
     (206) 622-5511 | Phone
     (206) 622-8986 | Fax
4    Email:  rross@bbllaw.com
             mmadderra@bbllaw.com

5

6

7                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF WASHINGTON
8

9    LESLIE JACK, Individually and as Personal    CASE NO. 2:17-cv-00537-JLR
     Representative of the ESTATE OF PATRICK
     JACK; and DAVID JACK,                        DEFENDANT BORGWARNER
10                                                 MORSE TEC, LLC'S TRIAL BRIEF
                        Plaintiffs,
11
          vs.
12
     ASBESTOS CORPORATION LTD., et al.,
13
                        Defendants.
14

15                            **I. INTRODUCTION**

16        This brief is submitted on behalf of Defendant BorgWarner Morse TEC, LLC
     ("BWMT").

17                        **II.  FACTS AND DEFENSES**

18        Plaintiffs Leslie Jack and David Jack allege that Patrick Jack (the "Decedent") was

     exposed to asbestos while working with Borg-Warner brand clutch discs.  To support their
19
     claims against BWMT based on its liabilities relating to the sale of Borg-Warner brand clutch

20   discs, Plaintiffs rely on the testimony of the Decedent, who was deposed over a period of

BORGWARNER'S TRIAL BRIEF - Page 1                    LAW OFFICES
02991-001\2324947                          BENNETT BIGELOW & LEEDOM, P.S.
                                                601 Union Street, Suite 1500
                                                Seattle, Washington 98101-1363
                                           T: (206) 622-5511  F: (206) 622-8986

seven days in June 2017.  BWMT is not aware of any other source of evidence regarding his exposure to BWMT products.  Decedent's testimony will be read to the jury.

On direct examination by counsel for Plaintiffs, the Decedent testified to the various vehicle repairs he performed, both personally on vehicles owned by himself or friends and family as well as repairs performed on vehicles during the year and a half he co-owned a Seattle area auto repair shop, Dexter Avenue Automotive Repair (1962-1964).  While the Decedent was ultimately prompted by his counsel to identify Borg-Warner as a brand of clutch disc he "worked with" during his lifetime, counsel's question did not clarify whether or not that work involved the installation or removal (or both) of such products.

**Installation Identification Testimony**.  During the discovery portion of his deposition Decedent clarified that he recalled installing Borg-Warner clutch discs as both a professional mechanic / co-owner of Dexter Avenue Auto Repair in the early 1960's and when he did shadetree work.  At Dexter, he testified that he occasionally installed Borg-Warner brand clutch discs.  In addition, he testified that he installed Borg-Warner clutch discs a total of "eight to ten" times on vehicles owned either by him or by friends and family members.  Here, however, the basis for his testimony is suspect.  While the Decedent explained that he bought the "eight to ten" new clutch discs from a Ford dealer ship, he further stated that only three came in a package marked with the trade name "BorgWarner." The remaining five to seven clutch discs were either marked with the name "Ford" or bore no product names or insignia.

There is no evidence supporting the Decedent's subjective belief that OEM and unmarked auto parts purchased from Ford were manufactured by BWMT.  As Decedent testified, the products were not marked as a BorgWarner parts and, some at least, carried the Ford insignia.

**Removal Identification Testimony**.  The Decedent was also asked to identify the number of times that he removed a Borg-Warner brand clutch disc from any vehicle. His

BORGWARNER'S TRIAL BRIEF - Page 2
02991-001\2324947

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1
2
3
4
5
6
7

answer was clear: once. He testified that he specifically recalled installing two Borg-Warner brand clutch discs in a vehicle owned by a customer at Dexter Avenue Auto Repair. As a result, he believed that the second one he removed would have been the same one he previously installed, a Borg-Warner branded product. The Decedent was not able to identify any other instance in which he removed a Borg-Warner brand clutch disc from a vehicle, whether personal, owned by family or friends, or owned by a customer of Dexter Avenue Auto Repair. This alleged autowork is *de minimis*, from which no alleged exposure to asbestos from BorgWarner products could have been a substantial factor of Decedent's alleged harm.

8
9

BWMT also intends to present evidence that Decedent's asbestos exposures related to automotive work, if any, were a consequence of Decedent's work with other manufacturer's products.

10
11
12
13

**Plaintiffs' Other Exposures.** There is a mountain of evidence that for more than 25 years Patrick Jack had countless exposures to amosite-containing thermal insulation in the Navy and at Puget Sound Naval Shipyard. Indeed, Mr. Jack not only removed pipe insulation himself while he was on the U.S.S. Brannon but he was quite literally surrounded by it while living aboard the ship for almost a year:

14

Q:   Do you know how many tons of asbestos is on one of those ships, sir?

15

A:   No idea, sir.

16

Q:   You were aboard a ship for about a year, weren't you?

A:   Yes, sir.

17

Q:   A lot of insulated pipe, right?

18

A:   Yes, sir.

Q:   We're talking hundreds of yards if we lined it up end to end, right?

19

A:   I believe so, yes sir.

20

Q:   Probably even miles—if we took all the insulated pipe that were

BORGWARNER'S TRIAL BRIEF - Page 3
02991-001\2324947

1    aboard the U.S.S. Charles Brannon and put them end to end, we'd
     probably have several miles of insulated pipe, right?

2    A:    Yes, sir.

3    Q:    And I'm not even talking about equipment. I'm just talking about
           piping. Are you with me?

4    A:    Yes, sir.

     Q:    And you saw insulation that went on those pipes, right?
5
     A:    Yes, sir.

6    Dkt. # 684-1 (Videotaped Perpetuation Deposition Upon Oral Examination of Patrick Jack

7    (Vol. III) taken June 30, 2017 at 333:1-334:6).  With respect to his exposure at Puget Sound

     Naval Shipyard, Decedent testified as follows:

8    Q:    Do you remember ever seeing anybody applying pipe covering to a
           line, steam line aboard the ship?
9
     A:    Pipe-covering insulation?

10   Q:    Yes.

11   A:    Yes, sir.

     Q:    You saw that happen at the shipyard, correct?
12
     A:    Yes, sir.

13   Q:    Many a time, right?

     A:    Yes, sir.
14
     Q:    And you saw people removing insulation from the shipyard—or
15         from the pipes on board ship, correct?

     A:    Yes, sir.
16
Dkt. # 684-3 (Videotaped Discovery Deposition Upon Oral Examination of Patrick Jack (Vol.

17   III) dated June 27, 2018 at 318:21-319:10).  In fact, when asked to quantify how many times

18   while at the Puget Sound Navy Shipyard he had been in areas where others were handling

     insulation, Mr. Jack candidly responded, "I'd say a lot."  Dkt. # 684-4 (Videotaped Discovery

19   Deposition Upon Oral Examination of Patrick Jack (Vol. IV) dated June 28, 2018 at 407:7-

20   25).  Defendant intends to present this evidence, and related evidence, to the jury for their

BORGWARNER'S TRIAL BRIEF - Page 4
02991-001\2324947

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1   consideration and evaluation of the entirety of Mr. Jack's alleged asbestos exposures.

2       Additionally, BWMT intends to present evidence that Mr. Jack was exposed to

3   asbestos as a child, including take home exposure from asbestos on his father's work clothing

4   as well as direct exposures as a result of Decedent's visits to his father's worksite at the Union
    Pacific Railroad.

5                          **III.  APPLICABLE LAW**

6       **A.     The 1981 Washington Product Liability Act Applies.**

    Products liability cases are governed by the Washington Products Liability Act, Ch.

7   7.72 RCW (WPLA).  The WPLA was enacted as part of the Tort Reform Act of 1981 and

8   applies to all product liability claims "arising on or after July 26, 1981."  RCW 4.22.920(1).

9   The WPLA supplants common law claims or actions.  *Fagg v. Bartells Asbestos Settlement*

    *Trust*, 184 Wn. App. 804, 812, 339 P.3d 207 (2014).  Whether the WPLA or common law is

10  applied depends on when the injury-occurring event took place, not when a disease manifests

11  or is diagnosed.  *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 585, 915 P.2d 581 (1996).

        When a plaintiff's alleged exposure to injury-causing products spans a prolonged time,

12  and it appears that substantially all of the injury-producing events occurred prior to the

13  adoption of the 1981 Act, the 1981 Act does not apply.  *Krivanek v. Fibreboard Corp.*, 72

14  Wn. App. 632, 635, 865 P.2d 527 (1993).  Conversely, the WPLA applies *unless* plaintiff

    demonstrates that substantially all of the claimed exposures occurred before the WPLA's

15  effective date.  *Fagg*, 184 Wn. App. at 812-13; *Macias v. Saberhagen*, 175 Wn.2d 402,

16  408,282 P.3d 1069 (2012).  Washington courts have defined "substantially all" to mean 85

17  percent or more.  *Fagg*, 184 Wn. App. at 813.  The application of the WPLA or common law

    is defendant specific.  *See Saberhagen*, 175 Wn.2d at 409, n. 2 (reviewing the record of

18  asbestos exposure as to each defendant to determine whether the 1981 law applies); *see also*

19  *Fagg*, 184 Wn. App. 804, 814-15 (2014).

20
    BORGWARNER'S TRIAL BRIEF - Page 5
    02991-001\2324947

    LAW OFFICES
    BENNETT BIGELOW & LEEDOM, P.S.
    601 Union Street, Suite 1500
    Seattle, Washington 98101-1363
    T: (206) 622-5511  F: (206) 622-8986

1

2    Here, Plaintiffs allege that Mr. Jack was exposed to asbestos containing BorgWarner

clutch discs from the mid-1950s until 2007.  Dkt. #613 (Plaintiff's Response to BWMT's

3    Motion for Summary Judgment) at 1-4.  Although BorgWarner disputes the vast majority of

these exposures, Plaintiffs' allegations make clear that many of these alleged exposures relate

4    to Mr. Jack's "own vehicles in the 1980s and 1990s." *Id.* at 1.  Indeed, Plaintiffs assert that

5    "there were 'lots' of [vehicles he performed clutch work] on throughout his life[.]"  *Id.* at 4.

6    BorgWarner sought summary judgment dismissal because Plaintiffs failed to provide

adequate specific testimony regarding Decedent's clutch work.  This motion was denied, in

7    part, as a consequence that the Decedent identified performing "lots" of clutch work and that

8    Plaintiffs alleged that BorgWarner sold asbestos-containing clutches into the 1980s.  *See* Dkt.

#706 (Court's Order on Motions for Summary Judgment) at 43.  Because Plaintiffs do not

9    allege, and cannot show, that 85% of Mr. Jack's clutch disc work took place prior to 1981, the

10   WPLA applies to Plaintiffs' claims against BorgWarner.

11   **B.        Liability Standards for Products Liability Claims Under the WPLA.**

*1.        Single Claim for Product Liability.*

12   The WPLA establishes a single "product liability claim," which is defined as

13   including, but not limited to:

14              Any claim or action previously based on: Strict liability in tort;
             negligence, breach of express or implied warranty; breach of, or
15             failure to, discharge a duty to warn or instruct, whether negligent
             or innocent; misrepresentation, concealment or nondisclosure,
16             whether negligent or innocent; or other claim or action previously
             based on any other substantive legal theory except fraud,
17             intentionally caused harm or a claim or action under the
             Consumer Protection Act, Chapter 19.86 RCW.

18   RCW 7.72.10 (4).

All common law theories related to product liability are pre-empted. *Washington*

19   *Water Power Co. v. Graybar Electric Co.*, 112 Wn.2d 847, 853, 774 P.2d 1199 (1989). The

20   WPLA allows for claims based on design defect, failure-to-warn, construction defect, and

BORGWARNER'S TRIAL BRIEF - Page 6
02991-001\2324947

1  breach of warranty theories. RCW 7.72.030.  Plaintiffs have no claims of either construction

2  defects or breach of warranty.  And, as further discussed below, claims alleging alleged

3  design defects or inadequate warnings fail as well.

> 2.    *Product liability is assessed in relation to alternative*
4  *designs or warnings practicable at the time the product*
> *was made.*

5  The substance of a design-defect claim is set forth in RCW 7.72.030(l)(a):

6  > A product is not reasonably safe as designed, if, at the time of
> manufacture, the likelihood that the product would cause the
7  > claimant's harm or similar harms, and the seriousness of those
> harms, outweighed the burden on the manufacturer to design a
> product that would have prevented those harms and the adverse
8  > effect that an alternative design that was practical and feasible
> would have on the usefulness of the product.

9  The Act expressly provides that, in strict liability claims predicated upon alleged

10  design defect or failure to warn, the trier of fact may consider evidence of custom within the

11  defendant's industry, technological feasibility of alternate designs or warnings, the state of the

pertinent (scientific) art, and compliance with regulatory or industrial standards. RCW

12  7.72.050.  *Crittenden v. Fibreboard Corp.*, 58 Wn. App. 649, 659 (1990).  *See also Tabert,*

13  *supra*, and *Falk, supra*, 113 Wn.2d at 655.  It is not reasonable for a consumer to expect a

manufacturer to provide a safer product than was technologically feasible at the time when the

14  product was made.

15  Although a plaintiff does not bear the burden to prove alternative safe designs,

16  evidence pertaining to such alternatives is relevant.  RCW 7.72.030(1)(a).  *See Crittenden,*

*supra.*  Thus, the Act, as construed by *Crittenden* and *Falk*, permits defendants to offer

17  evidence that there was no feasible alternative safe design for its valves in light of what it

18  reasonably understood about product safety at the time its product was manufactured.

19  > 3.    *The Consumer Expectations Test Is Not Absolute Liability*

The WPLA incorporated the "consumer expectations test" followed in *Tabert*:

20

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1
2

> In determining whether a product was not reasonably safe under this section [RCW 7.72.030] the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

3

RCW 7.72.030(3).  This test determines whether a warning is necessary or an

4

alternative design is feasible.  The manufacturer has no duty to warn, for example, of obvious

5

dangers.  "[A] failure to warn amounts to negligence only where the supplier of a dangerous

6

good has no reason to believe that those for whom the good is supplied will realize its

7

dangerous condition."  *Baughn v. Honda Motor Co., Ltd.*, 107 Wn.2d 127, 140-141, 727 P.2d 655 (1986).

8

A manufacturer is not liable for every hazard that an ordinary user would fail to

9

recognize.  Instead, the manufacturer is liable only if it was able to warn the user and failed to

10

do so, or if it could have adopted an alternative safe design that was practical and feasible.

The reasonableness of the ordinary consumer's expectation is assessed in relation to "the

11

feasibility of eliminating or minimizing the risk."  *Tabert*, 86 Wn.2d at 154 (not reasonable

for a consumer to expect a Volkswagen to be as crashworthy as a Cadillac).

12

4.       *Evidence of Compliance With Industry Custom and Regulatory Standards Is Admissible*.

13

RCW 7.72.050(1) expressly allows for the introduction of evidence relating to

14

industry custom and compliance with regulatory standards:

15

> Evidence of custom in the product seller's industry, technological feasibility or that the product was or was not, in compliance with non-governmental standards or with legislative regulatory standards or administrative regulatory standards, whether relating to design, construction or performance of the product or to warnings or instructions as to its use may be considered by the trier of fact.

16
17

18

Thus, a defendant's compliance with industry custom is a relevant consideration in

19

determining whether a product was "not reasonably safe."  In *Falk, supra*, the Court held that

RCW 7.72.050(1) applies to design defect claims under either the "burden to design a safe

20

BORGWARNER'S TRIAL BRIEF - Page 8
02991-001\2324947

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1  product" test (RCW 7.72.030(I)(a)) or the "consumer expectations" test (RCW 7.72.030(3)).

2  113 Wn.2d at 654-655.  *See also Crittenden v. Fibreboard Corp.*, 58 Wn. App. 649 (1990).

3        5.       *BWMT Had No Duty To Warn Of Hazards It Was Not*
                  *Aware Of*

4      Defendants cannot be held liable for failing to warn of hazards they did not know

5  about and could not reasonably have discovered through the exercise of ordinary care:

6          A product manufacturer is subject to liability to a claimant if the
           claimant's harm was proximately caused by the negligence of the
           manufacturer in that the product was ... not reasonably safe
7          because adequate warnings or instructions were not provided...

8          A product is not reasonably safe because adequate warnings or
           instructions were not provided with the product, if, at the time of
           manufacture, the likelihood that the product would cause the
9          claimant's harm or similar harms, and the seriousness of those
           harms, rendered the warnings or instructions of the manufacturer
           inadequate and the manufacturer could have provided the
10         warnings or instructions which the claimant alleges would have
           been adequate.

11  RCW 7.72.030(1), and subsection (b).

12     Here BWMT argues that the type of asbestos used in its products do not cause

13  mesothelioma.  But if the jury believes exposure was a substantial contributing factor, the lack

   of scientific basis establishing such a connection obviates any duty to warn alleged.

14        6.       *Decedent's Use of BorgWarner Clutch Discs Did Not*
                  *Proximately Cause His Mesothelioma.*

15     Basic product liability theory requires a plaintiff establish proximate cause, *i.e.*, a

16  reasonable connection between the injury, the product causing the injury, and the

17  manufacturer of the product. *See Martin v. Abbott Labs*, 102 Wn.2d 581, 590, 689 P.2d 368

18  (1984). There is no product liability claim against a defendant unless Plaintiffs can show that

   the defendant was the particular manufacturer of the product that caused the injury. *See*

19  *Lockwood v. A.C. & S.*, 109 Wn.2d 235, 245, 744 P.2d 605 (1987).  In the context of asbestos

20  litigation, a plaintiff must prove that the exposure to asbestos-containing products

BORGWARNER'S TRIAL BRIEF - Page 9
02991-001\2324947

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1   manufactured by a defendant was a "substantial factor" in causing his disease.  *See Lockwood*

2   *v. AC & S, Inc.*, 109 Wn.2d 235, 245, 744 P.2d 605 (1987); *Mavroudis v. Pittsburgh-Corning*

3   *Corp.*, 86 Wn. App. 22, 28, 935 P.2d 684 (1997).

4         Not all exposures are substantial.  Washington courts use the *Lockwood* multifactor

    test to determine whether sufficient evidence of causation has been presented to warrant

5   submission of the case to the jury:

6   - plaintiff's proximity to the asbestos product when the exposure
      occurred;
7   - the expanse of the work site where asbestos fibers were
      released;
8   - the extent of time that the plaintiff was exposed to a particular
      product;
    - the types of products to which the plaintiff was exposed;
9   - the ways in which such products were handled and used;
    - evidence as to the medical causation of the plaintiff's particular
10    disease.

          In analyzing these factors in the context of a particular plaintiff's alleged exposure to

11  an asbestos containing product, actual evidence of exposure is required.  The mere possibility

12  of, or opportunity for, an exposure is insufficient to establish liability.  *Wilson v. Northern*

13  *Pac. R. Co.*, 44 Wn.2d 122, 128, 265 P.2d 815 (1954).  Proximate cause must be proved by

    evidence, whether direct or circumstantial, not by speculation or conjecture or by inference

14  piled upon inference.  *Wilson*, 44 Wn 2d at 130.

15          7.     *Plaintiffs Will Not Be Able to Establish Proximate Cause.*

16        Plaintiff cannot point to Decedent's testimony alone as sufficient proof he was

    exposed to a significant source of asbestos.  Plaintiffs' causation expert, Dr. Carl Brodkin,

17  will concede that the mere act of handling and installing a product is not an exposure (or, if it

18  is, it is *de minimis* at best).  Dr. Brodkin further will acknowledge that one or two removals

    are not biologically significant and, thus, are either not quantifiable exposures or are not

19  sufficient to be deemed a substantial factor.  In either case, since we know nothing more about

20
    BORGWARNER'S TRIAL BRIEF - Page 10
    02991-001\2324947

    LAW OFFICES
    BENNETT BIGELOW & LEEDOM, P.S.
    601 Union Street, Suite 1500
    Seattle, Washington 98101-1363
    T: (206) 622-5511  F: (206) 622-8986

1

2

3

that job than the mere fact that he believed it was a Borg-Warner product since he previously

installed a Borg-Warner on that very car, Dr. Brodkin cannot quantify what the conditions

were that could be relied upon to describe that removal as an exposure source.  He does not

4

know, for instance, whether that removal was dusty or oily; whether it was done in the same

week or month; he does not even know if there was an interim clutch job done between those

5

6

installations.  The Decedent did not identify the clutch disc by any marks or symbols on it and

he did not describe why he believed it was the same disc.  The testimony reveals only his

7

speculation that it was the same disc.  And it does not provide evidence sufficient to conclude

it was a source of asbestos.

8

Further, Decedent testified that he installed up to twenty clutch discs yet removed only

9

one.  By Dr. Brodkin's concession, those installations do not constitute exposures or are not

causative.  Thus, Plaintiffs' case rests entirely on that one single instance in which Decedent

10

removed a Borg-Warner clutch disc.  If there is a circumstance where one removal alone

11

could be deemed sufficient to constitute a "substantial factor" of the Decedent's disease, this

is not it.  Moreover, Dr. Brodkin will testify that one or two exposures to a given product

12

cannot be deemed significant unless they are "well characterized."  Decedent's alleged

13

exposure, lacking any further examination of the circumstances, is not well characterized.

14

Plaintiffs' evidence is insufficient to meet their burden of proving substantial factor causation.

15

8.      *Proportionate Liability Should Apply.*

If a jury allocates fault to BWMT, it is only responsible for its proportionate share of

16

damages.  RCW 4.22.070 states:

17

18

19

20

(1) In all actions involving fault of more than one entity, the trier
of fact shall determine the percentage of the total fault which is
attributable to every entity which caused the claimant's damages
except entities immune from liability to the claimant under Title
51 RCW. The sum of the percentages of the total fault attributed
to at-fault entities shall equal one hundred percent. The entities
whose fault shall be determined include the claimant or person
suffering personal injury or incurring property damage,

BORGWARNER'S TRIAL BRIEF - Page 11
02991-001\2324947

1
2
3
4
5

defendants, third-party defendants, entities released by the claimant, entities with any other individual defense against the claimant, and entities immune from liability to the claimant, but shall not include those entities immune from liability to the claimant under Title 51 RCW. Judgment shall be entered against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages. The liability of each defendant shall be several only and shall not be joint except:

6
7

(a) A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party.

8
9
10

(b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [claimant's] total damages.

RCW 4.22.070.

11

        If the jury apportions fault to Mr. Jack, each defendant is only responsible for the

12

portion of fault assigned to that defendant.  If the jury does not apportion fault to Mr. Jack, the

13

defendants on the jury verdict are jointly and severally responsible for the total fault allocated

14

to those defendants on a collective basis.  Defendants are not responsible for fault allocated to

15

empty chairs, including settling defendants, entities not named, and entities immune from suit

16

(such as the US Navy), with the exception of former employers immune under the

17

Washington State's Workers Compensation Statute. *See Anderson v. City of Seattle*, 123

Wash. 2d 847, 852, 873 P.2d 489, 491–92 (1994) ("If a final judgment is entered against only

one defendant, that defendant is only severally liable for its proportionate share of fault

18

regardless of whether fault is apportioned among other entities.").

19

        9.        *Damages*

20

BORGWARNER'S TRIAL BRIEF - Page 12
02991-001\2324947

The burden of proving the fact and amount of damages is on the plaintiff. *National School Studios, Inc. v. Superior School Photo Services, Inc.*, 40 Wn.2d 263, 275, 242 P.2d 756 (1952). The plaintiff has the burden of presenting sufficient evidence from which damages can be determined on a rational basis. Speculation and conjecture will not support an award of damages. *Hyde v. Wellpenit School District No. 49*, 32 Wn. App. 465, 470, 648 P.2d 892 (1982).

It is BWMT's understanding that Plaintiffs do not intend to present an economist at trial. *See* Dkt. 701-1 (Proposed Joint Pretrial Order). Consequently, Plaintiffs should be limited to request damages in the amounts actually quantified by qualified Plaintiffs' experts (*e.g.*, medical expenses and other economic damages). Unless Plaintiffs present an economist at trial any specific damages amounts requested for non-economic damages, such as loss of consortium, are unfairly prejudicial as they lack adequate foundation for the jury's consideration and will improperly skew jurors' valuation of the case. *See* Ford's Motion in Limine 6 (Dkt. # 660).

## D. Even if the Pre-Tort Reform Act Applied, Plaintiffs Cannot Establish Liability as to BorgWarner.

Under pre-Tort Reform Act law strict product liability is based upon the Restatement (Second) of Torts as first applied in *Ulmer v. Ford Motor Company*, 75 Wn.2d 522, 452 P.2d 729 (1969). The Restatement (Second) of Torts at Section 402A states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

To maintain a strict liability claim under pre-Tort Reform Act law, Plaintiffs must prove: (1) a defect, either in design or manufacturing, (2) which existed at the time the

BORGWARNER'S TRIAL BRIEF - Page 13
02991-001\2324947

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

product left the hands of the manufacturer, (3) not contemplated by the user, (4) which renders the product unreasonably dangerous or not reasonably safe, and (5) which was the proximate cause of plaintiff's injury. *Bich v. General Electric Co.*, 27 Wn. App. 25, 28, 614 P.2d 1323 (1980); *Lamon v. McDonnell Douglas Corp.*, 19 Wn. App. 515, 576 P.2d 426 (1978).  Plaintiff will fail to prove these elements as to BWMT.

## IV.     CONCLUSION

Plaintiffs will be unable to establish the liability of BWMT for either the design defect or failure to warn claims defined in RCW 7.72.030. Similarly, Plaintiffs cannot establish the requisite proximate cause between Mr. Jack's disease and his alleged exposure, if any, to BWMT products. Nor will Plaintiffs be able to establish liability against BWMT under any other theory or claim based upon the applicable law in this case.

DATED this 21st day of September, 2018.

BENNETT BIGELOW & LEEDOM, P.S.


By: s/ Richard D. Ross
    Richard D. Ross, WSBA #34502
    Michael J. Madderra, WSBA #48169
    601 Union Street, Suite 1500
    Seattle, WA  98101-1363
    (206) 622-5511 | Phone
    (206) 622-8986 | Fax
    Email:  rross@bbllaw.com
        mmadderra@bbllaw.com

    *Attorneys for Defendant*
    *BorgWarner Morse TEC, LLC*

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986