UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LESLIE JACK, et al.,<br><br>Plaintiffs,<br>v.<br><br>BORG-WARNER MORSE TEC, LLC, et al.,<br><br>Defendants. | CASE NO. C17-0537JLR<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND STAY |

## I.  INTRODUCTION

Before the court is Plaintiffs Leslie Jack and David Jack's (collectively, "Plaintiffs") motion for reconsideration and stay of the court's September 17, 2018, order granting summary judgment to Defendant Union Pacific Railroad Company ("Union Pacific"). (Mot. (Dkt. # 714); *see also* SJ Ord. (Dkt. # 706) at 22-26, 28-30.)  Union Pacific opposes the motion. (Resp. (Dkt. # 743).)  The court has considered the motion, the parties' submissions concerning the motion, other relevant portions of the record, and

the applicable law. Being fully advised,[1] the court DENIES Plaintiffs' motion for reconsideration and stay for the reasons set forth below.

## I. BACKGROUND

The court extensively detailed the factual background of Plaintiffs' claims against Union Pacific in its order on the parties' summary judgment motions. (*See* SJ Ord. at 4-7, 22-26, 28-30.) Here, the court recounts only those facts relevant to the instant motion.

Plaintiffs allege that as a child and a teenager, Mr. Jack was exposed to asbestos utilized by Union Pacific, his father's employer. (*See* SAC ¶ 42B; Pl. MSJ Union Pacific (Dkt. # 509) at 3.) Plaintiffs claim that Mr. Jack (1) was exposed to asbestos dust carried home on his father's work clothes ("secondary exposure claim"), and (2) suffered bystander asbestos exposure when he accompanied his father to work on various occasions between 1949 and 1952 ("bystander exposure claim"). (*See* SJ Ord. at 4-5; *see also* Pl. MSJ Union Pacific at 3.) Union Pacific moved for summary judgment on Plaintiffs' secondary exposure claim on the ground that in and before 1955—the last year Mr. Jack lived in his father's home—the risks of secondary exposure to family members of asbestos-exposed employees were not reasonably foreseeable. (Union Pacific MSJ (Dkt. # 476) at 17-19.) Additionally, Union Pacific moved for summary judgment on Plaintiffs' bystander exposure claim on the ground that Plaintiffs could show neither that

//

---

[1] No party asked for oral argument, and the court finds this motion appropriate for disposition without it. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

Mr. Jack was exposed to asbestos on Union Pacific premises nor that any such exposure could have been a substantial factor in causing Mr. Jack's mesothelioma. (*Id.* at 10-17.)

In opposing summary judgment on the secondary exposure claim, Plaintiffs relied on Dr. Barry Castleman's expert testimony on historical awareness of asbestos-related hazards. (*See* Pl. SJ Resp. (Dkt. # 611) at 3-4, 6-7.) Plaintiffs argued that Dr. Castleman's deposition testimony showed that Union Pacific should have foreseen the risks of secondary exposure during the years Mr. Jack accompanied his father to work. (*See* Pl. SJ Resp. at 6-7.) Dr. Castleman testified that as early as 1913, some industrial employers were aware that hazardous materials could cling to employees' work clothes and contaminate their homes. (*Id.* at 6 (citing Adams Decl. (Dkt. # 612) ¶ 2, Ex. I ("Castleman Dep.") at 19:21-21:16).) Additionally, Dr. Castleman testified that "in the 1950s," Dr. Wilhelm Hueper, a leading authority on occupational cancer, encouraged employers to "take protective measures to prevent . . . carcinogenic materials from going home." (*Id.* at 7 (citing Castleman Dep. at 22:7-21).)

In opposing summary judgment on the bystander exposure claim, Plaintiffs relied primarily on Mr. Jack's recollections of the materials he observed on Union Pacific premises. (Pl. SJ Resp. at 2-3, 5-6.) Mr. Jack testified that, on approximately six to eight occasions, he observed his father and other workers cut, install, and remove what he later believed to be cement piping and insulation. (*See* Pl. SJ Resp. at 2-3 (citing Adams Decl. (Dkt. # 612) ¶ 2, Ex. C ("Jack Perp. Dep.") at 18:17-31:12.) Notably, Plaintiffs' response did not directly address Union Pacific's contention that Plaintiffs' evidence was insufficient to "establish their threshold burden of [asbestos] exposure" on Union Pacific

premises. (Union Pacific MSJ at 10; *see generally* Pl. SJ Resp.) Rather, Plaintiffs summarily claimed that Mr. Jack "saw Union Pacific workers cutting asbestos-cement pipe," citing only Mr. Jack's deposition testimony—which never positively identified those materials as containing asbestos—for support. (Pl. SJ Resp. at 3 (citing Jack Perp. Dep. at 20:13-21:22).) Plaintiffs did, however, attach to their response excerpts of the deposition testimony of Dr. Carl Brodkin, a physician of occupational medicine whom Plaintiffs have retained as an expert witness. (*See* Adams Decl. (Dkt. # 612) ¶ 2, Ex. F ("Brodkin Dep.").) In the deposition excerpts Plaintiffs provided, Dr. Brodkin opined that in light of the period of Mr. Jack's father's employment, as well as Mr. Jack's descriptions of the pipes and insulation he observed, Mr. Jack's father likely worked with asbestos-containing cement and insulation at Union Pacific. (Brodkin Dep. at 140:11-141:13.) To support that opinion, Dr. Brodkin cited the testimony of an industrial hygienist who, for purposes of an unrelated case, documented asbestos use in the Burlington Northern Santa Fe Railway system. (*Id.* at 137:10-139:5.) The industrial hygienist upon whom Dr. Brodkin relied, however, did not specifically document asbestos use at Union Pacific during this period. (*See id.*)

In its order of September 17, 2018, the court granted Union Pacific's motion for summary judgment. (*See* SJ Ord. at 22-26, 28-30.) With respect to Plaintiffs' secondary exposure claim, the court found that no reasonable juror could conclude that Union Pacific knew or should have known in and before 1955 of the risks that take-home

//

//

exposure posed to employees' family members.[2] (SJ Ord. at 26.) Because the harm Mr. Jack allegedly suffered from secondary exposure was not foreseeable during the relevant period, the court concluded that Plaintiffs' negligence claim against Union Pacific failed as a matter of law. (*See id.* at 23-26.) In so concluding, the court emphasized Dr. Castleman's testimony that as of 1955, there was "practically nothing in print" on the hazards of secondary exposure. (*Id.* at 25 (quoting Castleman Dep. at 19:20).) As to Plaintiffs' bystander exposure claim, the court found that the record did not reasonably support the conclusion that Mr. Jack was actually exposed to asbestos when he accompanied his father to work. (*Id.* at 29-30.) Even considering Dr. Brodkin's opinion testimony, the court concluded that Plaintiffs failed to adduce any evidence that located asbestos-containing products at the Union Pacific workplaces Mr. Jack visited between 1949 and 1952. (*Id.*)

On September 21, 2018, Plaintiffs filed a motion for reconsideration and stay of the court's summary judgment order. (*See* Mot.) Plaintiffs attached to the motion a voluminous compilation of exhibits. (*See* Breen Decl. (Dkt. # 715) ¶ 2.) Of the 15 exhibits Plaintiffs submitted in support of the instant motion (*see id.*), just one accompanied Plaintiffs' response to Union Pacific's motion for summary judgment (*see* Adams Decl. (Dkt. # 612) ¶ 2.) Further, Union Pacific contends that "none of [these]

//

---

[2] At summary judgment, for purposes of determining whether Plaintiffs' secondary exposure claim survived as a matter of law, the court assumed that Mr. Jack's father was exposed to asbestos on Union Pacific premises. (SJ Ord. at 22 n.16.)

exhibits were identified in any pretrial discovery response or initial disclosures." (Resp. at 9.) If these representations are accurate, they represent potentially sanctionable conduct by Plaintiffs' lawyers.

## II. ANALYSIS

### A. Standards Governing Motions for Reconsideration

Motions for reconsideration are disfavored. Local Rules W.D. Wash. LCR 7(h)(1). The court will ordinarily deny such motions unless the moving party demonstrates (1) manifest error in the prior ruling, or (2) new facts or legal authority which could not have been brought to the court's attention earlier with reasonable diligence. *Id.* A party may not raise as a basis for reconsideration arguments or facts that it reasonably could have raised but did not raise prior to the contested ruling. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)) ("A motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'"); *see also Castello v. City of Seattle*, No. C10-1457MJP, 2011 WL 219671, at *4 (W.D. Wash. Jan. 24, 2011) ("[B]ecause this is an entirely new argument, there can be no question of 'manifest error in the prior ruling;' the Court cannot have ruled in error on an argument never before raised.").

### B. Plaintiffs' Secondary Exposure Claim

Plaintiffs argue that the court committed manifest error in granting Union Pacific's motion for summary judgment on Plaintiffs' secondary exposure claim for two reasons:

(1) the court overlooked pertinent evidence in Dr. Castleman's expert report, and (2) the court's conclusion on the foreseeability of the risks of secondary exposure is inconsistent with other authority. (Mot. at 6-7.)

Plaintiffs first contend that the court's order "did not address a variety of evidence discussed at pages 11-12 of [Dr.] Castleman['s] report." (Mot. at 6-7.) Significantly, Plaintiffs did not cite to or submit Dr. Castleman's report when opposing Union Pacific's motion for summary judgment. (*See generally* Pl. SJ Resp; Adams Decl. (Dkt. # 612) ¶ 2.) Union Pacific, rather, attached the report to its reply. (*See* Moore Decl. (Dkt. # 635), ¶ 2, Ex. A ("Castleman Rep.").)[3] In moving for reconsideration, Plaintiffs do not acknowledge that they failed to submit Dr. Castleman's report on their own accord. (*See generally* Mot. at 6-7.) In effect, they now seek a second bite at the apple on the basis of evidence they neglected at the summary judgment phase. *See Trade Assoc., Inc. v. Fusion Tech., Inc.*, No. C09-5804RJB, 2011 WL 13195953, at *1 (W.D. Wash. Mar. 15, 2011) ("Neither the Local Civil Rules nor the Federal Rule of Civil Procedure, which allow for a motion for reconsideration, is intended to provide litigants with a second bite at the apple.").

In any event, the evidence Plaintiffs highlight does not provide a basis for reconsideration. Plaintiffs' motion draws attention to two documents featured in Dr. Castleman's report: (1) a scientific article, published in 1946, that recommended that

---

[3] Plaintiffs previously submitted Dr. Castleman's report in conjunction with a *Daubert* motion (*see* Adams Decl. (Dkt. # 564) ¶ 2, Ex. A), as the court acknowledged in its order on summary judgment (*see* SJ Ord. at 17).

workers handling carcinogenic materials such as asbestos be provided with showers and rooms for storing street clothes, and (2) a United States Department of Labor document, issued in 1952, that required that federal contractors be provided facilities to prevent the transfer of harmful substances from work clothes to street clothes. (Mot. at 7 n.22 (citing Castleman Rep. at 11-12).)[4] The court already considered these authorities and found them unpersuasive. (*See* SJ Ord. at 25 (citing Castleman Rep. at 11-12).) Neither of these documents addresses the risks of secondary exposure to the families of asbestos-exposed workers; and neither casts doubt on Dr. Castleman's own admission that if in 1955 Union Pacific wanted to research the hazards of secondary exposure, it would have found "practically nothing in print." (*See* SJ Ord. at 25 (quoting Castleman Dep. at 19:20).) The court remains persuaded that no reasonable juror could charge Union Pacific with constructive knowledge of the risks of secondary exposure at a time when scientific and public health experts had yet to draw causal links between workers' direct exposure and family members' illnesses. (*See* SJ Ord. at 26.)

Second, Plaintiffs assert that the court's analysis is "inconsistent" with two non-binding authorities: *Kesner v. Superior Court of Alameda County.*, 384 P.3d 284 (Cal. 2016) and *Olivio v. Owens-Illinois, Inc.*, 895 A.2d 1143 (N.J. 2006). (Mot. at 7 n.23.) Because Plaintiffs failed to cite these cases at summary judgment (*see generally* Pl. SJ Resp.), they do not merit consideration here (*see* Local Rules W.D. Wash. LCR 7(h)(1)). Moreover, both cases are distinguishable from Plaintiffs' claims. The *Kesner*

---

[4] The court cites the page number at the lower right-hand corner of Dr. Castleman's report.

court considered allegations of take-home exposure dating after 1973. *See* 384 P.3d at 289. And *Olivio* implicated secondary exposure claims that stretched from the 1940s to the 1980s. *See* 895 A.2d at 1149. In sum, Plaintiffs provide no reason for the court to reconsider its conclusion that the "weight of existing law" provides that the dangers of secondary asbestos exposure were not foreseeable in and before 1955. (SJ Ord. at 26 (citing *Hoyt v. Lockheed Shipbuilding Co.*, No. C12-1648TSZ, 2013 WL 3270371, at *7 (W.D. Wash. Jun. 26, 2013), *aff'd sub nom. Hoyt v. Lockheed Martin Corp.*, 540 F. App'x 590 (9th Cir. 2013).)

Because Plaintiffs have not shown that the court committed "manifest error," *see* Local Rules W.D. Wash. LCR 7(h)(1), the court declines to reconsider its ruling granting Union Pacific's motion for summary judgment on Plaintiffs' secondary exposure claim.

**C.     Bystander Exposure Claim**

Plaintiffs challenge the court's ruling on the bystander exposure claim on multiple grounds. First, Plaintiffs argue that "the [c]ourt's conclusion that Dr. Brodkin's opinion [on the likelihood of asbestos use at Union Pacific] could not survive a *Daubert* challenge" was manifest error because the court did not afford Plaintiffs notice and an opportunity to respond. (Mot. at 2.) Relatedly, Plaintiffs contend that they did not have cause to submit additional evidence of asbestos use at Union Pacific because Union Pacific "did not challenge Dr. Brodkin's opinions on the asbestos content of products on UP premises." (*Id.* at 3.) Finally, Plaintiffs argue that "Dr. Brodkin's evidence together with Mr. Jack's testimony was sufficient to defeat [Union Pacific's] motion." (*Id.* at 5.) The court addresses these arguments in turn.

In their motion for reconsideration, Plaintiffs misconstrue the court's treatment of Dr. Brodkin's opinion on the likelihood of asbestos use at Union Pacific. Contrary to Plaintiffs' assertion, the court did not discount Dr. Brodkin's testimony on the basis of a *sua sponte* challenge under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Rather, as the body of the court's order makes clear, the court considered Dr. Brodkin's opinion testimony in conjunction with Plaintiffs' other evidence of exposure. (*See* SJ Ord. at 28-30.) Even in light of Dr. Brodkin's opinion, the court concluded, Plaintiffs' evidence was insufficient to raise a reasonable inference that Mr. Jack was actually exposed to asbestos on Union Pacific premises. (*See id.*) The court also suggested that Dr. Brodkin's opinion testimony lacked sufficient factual foundation to ensure its survival under Federal Rule of Evidence 702, but did not reach this issue in a dispositive sense. (*See id.* at 30 n.18.) In short, the court neither subjected Dr. Brodkin's opinion to a *Daubert* analysis nor excluded it from consideration; it simply concluded that Dr. Brodkin's opinion, along with Plaintiffs' other exposure evidence, was too imprecise to establish a "reasonable connection" between Mr. Jack's injury and Union Pacific's conduct. (SJ Ord. at 30 (quoting *Lockwood v. AC & S, Inc.*, 744 P.2d 605, 612 (Wash. 1987)).)

The court rejects as meritless Plaintiffs' argument that they were entitled to "notice of a challenge to evidence from Dr. Brodkin and an opportunity to respond." (Mot. at 2.) Plaintiffs should have foreseen that the court would examine the sufficiency of their exposure evidence, including Dr. Brodkin's testimony, at the summary judgment phase. To begin, Union Pacific's motion for summary judgment expressly disputed that

Plaintiffs' evidence showed that Mr. Jack was exposed to asbestos on Union Pacific premises. (*See* Union Pacific MSJ at 10 ("Union Pacific disputes that Plaintiffs can establish their threshold burden of exposure."); *id.* at 15 ("[T]here is no evidence proving [Mr. Jack's] father actually worked with asbestos containing products as part of his regular job duties."); *id.* at 16 ("[T]here is no admissible evidence in this case that Mr. Jack's father worked with/around asbestos while employed by Union Pacific.").) Moreover, Washington law makes clear that a plaintiff in an asbestos suit cannot establish proximate causation without first showing that the plaintiff was actually exposed to asbestos as a result of the defendant's conduct. *See, e.g.*, *Lockwood*, 744 P.2d at 612-613. In sum, Plaintiffs' suggestion that they were blindsided by the court's ruling on the exposure issue rings hollow. The court thus declines to consider the reams of new evidence Plaintiffs submit here. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880; Local Rule W.D. Wash. LCR 7(h)(1). Plaintiffs' effort to more clearly define Dr. Brodkin's testimony and locate asbestos on Union Pacific premises (*see* Breen Decl. (Dkt. # 715) ¶ 2, Ex. A, C-O) comes too late.

Finally, the court turns to Plaintiffs' argument that "Dr. Brodkin's evidence together with Mr. Jack's testimony was sufficient to defeat [Union Pacific's] motion." (Mot. at 5.) On this point, Plaintiffs offer no evidence or authority that the court did not consider at the summary judgment phase. Aside from Mr. Jack's recollections, Dr. Brodkin's deposition testimony was the only evidence Plaintiffs furnished to support their claim that Mr. Jack's father worked with asbestos at Union Pacific. (*See* Pl. SJ Resp. at 3 (citing Brodkin Dep. at 135:12-136:3, 137:10-18, 138:20-139:8,

140:11-141:13).)[5] In the deposition excerpts Plaintiffs submitted, Dr. Brodkin referenced just one specific authority when explaining his opinion on probable asbestos use at Union Pacific: a survey of a different railway system conducted in the 1980s for purposes of other litigation. (*See* Pl. SJ Resp. at 3 (citing Brodkin Dep. at 135:12-136:3, 137:10-18, 138:20-139:8, 140:11-141:13).)[6] This survey did not document asbestos use at Union Pacific during the relevant period. (*See* Brodkin Dep. at 138:20-139:8.) More generally, Plaintiffs adduced no specific facts that located asbestos on Union Pacific premises at any point in Mr. Jack's lifetime. (*See* SJ Ord. at 29-30; *see also generally* Pl. SJ Resp.) The court properly concluded that absent such facts, Plaintiffs could not satisfy their threshold

//

---

[5] In their response to Union Pacific's motion, Plaintiffs also provided a photograph of an unidentified asbestos-cement pipe (Adams Decl. (Dkt. # 612) ¶ 2, Ex. D) and a photograph of a hand-drawn cartoon commemorating Mr. Jack's father's retirement, which shows him digging for a leaky underground pipe (*id.* ¶ 2, Ex. E). Neither of these exhibits situated asbestos on Union Pacific premises.

[6] In their motion for reconsideration, Plaintiffs argue that "Dr. Brodkin referenced, both in his report submitted to the [c]ourt and in his deposition, medical/industrial hygiene articles that discuss widespread use of asbestos in myriad applications in the railroad industry in the relevant time period." (Mot. at 4.) But at summary judgment, Plaintiffs failed to provide the court with the parts of Dr. Brodkin's deposition that discuss those articles. (*See* Adams Decl. (Dkt. # 612) ¶ 2, Ex. F (containing only pages 10-13 and 134-141 of Dr. Brodkin's deposition; submitted in opposition to motion for summary judgment); *see also* Breen Decl. (Dkt. # 715) ¶ 2, Ex. B (containing pages 150-153 of Dr. Brodkin's deposition, which discuss the industrial hygiene articles; submitted in support of motion for reconsideration).) Plaintiffs do not explain why they could not have submitted these portions of Dr. Brodkin's deposition earlier, and the court declines to consider them. *See* Local Rules W.D. Wash. LCR 7(h)(1). Although Plaintiffs submitted Dr. Brodkin's voluminous report at summary judgment, they failed to identify where Dr. Brodkin relied on the above-mentioned articles. (*See generally* Pl. Resp. SJ.) As the court has previously noted, "judges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Even if Plaintiffs had specifically identified where the articles featured in Dr. Brodkin's report, without further explanation, the report's bare-bones references (*see* Adams Decl. (Dkt. # 612) ¶ 2, Ex. H) would have been of little help to the court.

burden to show that Mr. Jack was exposed to asbestos as a result of Union Pacific's conduct. (*See* SJ Ord. at 29-30.)

In sum, Plaintiffs have not shown that the court committed "manifest error" in granting Union Pacific's motion for summary judgment on the bystander exposure claim. *See* Local Rules W.D. Wash. LCR 7(h)(1). Accordingly, the court declines to reconsider its ruling.

### III. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for reconsideration and stay of its order granting summary judgment to Union Pacific (Dkt. # 714).

Dated this 30th day of September, 2018.

The Honorable James L. Robart
U.S. District Court Judge