UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LESLIE JACK, et al.,

Plaintiffs,

v.

DCO, LLC, et al.,

Defendants.

CASE NO. C17-0537JLR

ORDER GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW

## I. INTRODUCTION

Before the court are two post-trial motions: (1) Defendant DCo, LLC's (f/k/a Dana Companies, LLC) ("DCo") motion for judgment as a matter of law (DCo Mot. (Dkt. # 816)); and (2) Defendant Ford Motor Company's ("Ford") motion for judgment as a matter of law (Ford Mot. (Dkt. # 817)). Plaintiffs Leslie Jack and David Jack (collectively, "Plaintiffs") oppose both motions. (*See* Resp. DCo (Dkt. # 822); Resp. Ford (Dkt. # 824).) DCo and Ford (collectively, "Defendants") filed replies. (DCo Reply (Dkt. # 826); Ford Reply (Dkt. # 828).) The court has considered the motions, the

parties' submissions concerning the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS DCo's and Ford's motions for judgment as a matter of law for the reasons discussed below.

## II. BACKGROUND

The court detailed the factual background of this case in its summary judgment order. (*See* 9/17/18 Order (Dkt. # 706) at 3-19.) Here, the court recounts only those facts relevant to the present motions, including the procedural history, the evidence presented at trial, and the jury verdict.

### A. Procedural History

This case arises from decedent Patrick Jack's exposure to asbestos-containing products through his work as an automotive mechanic, a machinist in the Navy, and a machinist and nuclear inspector at the Puget Sound Naval Shipyard ("the Shipyard"). (*See, e.g.*, 10/1/18 Trial Tr. (Dkt. # 806) at 168:8-171:20.) After he developed mesothelioma, Mr. Jack sued multiple companies that allegedly supplied, manufactured, or sold asbestos-containing materials and equipment to which he was exposed over the course of several decades. (*See* 2d Am. Compl. (Dkt. # 253) ¶¶ 3-40.) In October 2017, Mr. Jack died of mesothelioma. (Pl. Trial Br. (Dkt. # 726) at 1.) Mr. Jack's wife, Ms. Jack, and Mr. Jack's son, David Jack, proceeded as Plaintiffs. (*See* 2d Am. Compl. at 1.)

//

[1] Ford requests oral argument on its motion (*see* Ford Mot. at Title Page), but the court finds that oral argument is unnecessary to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

From October 1, 2018, to October 12, 2018, Plaintiffs tried their claims against DCo and Ford before a jury.[2] (*See* Trial Min. Entries (Dkt. ## 753, 757, 763, 764, 770, 774, 781, 784, 789); *see also* 10/1/18 Trial Tr.; 10/2/18 Trial Tr. (Dkt. # 807); 10/3/18 Trial Tr. (Dkt. # 808); 10/4/18 Trial Tr. (Dkt. # 809); 10/5/18 Trial Tr. (Dkt. # 810); 10/9/18 Trial Tr. (Dkt. # 811); 10/10/18 Trial Tr. (Dkt. # 812); 10/11/18 Trial Tr. (Dkt. # 813).) Plaintiffs asserted three theories of liability against each Defendant: (1) negligence; (2) strict liability for failure to design reasonably safe products ("strict liability design defect claims"); and (3) strict liability for failure to warn of unsafe conditions in their products ("strict liability failure-to-warn claims"). (*See* Pl. Trial Br. at 6-12.) After Plaintiffs rested their case, DCo and Ford made oral motions for judgment as a matter of law. (*See* 10/10/18 Trial Min. Entry; 10/10/18 Trial Tr. at 260:12-270:4); *see also* Fed. R. Civ. P. 50(a). DCo and Ford renewed those motions after the jury rendered its verdict. (*See* DCo Mot.; Ford Mot.); *see also* Fed. R. Civ. P. 50(b).

**B. Evidence Presented at Trial**

At trial, Plaintiffs introduced evidence that Mr. Jack used gaskets manufactured or sold by DCo and automotive brakes and clutches sold by Ford. (*See, e.g.*, 10/4/18 Trial Tr. at 101:11-14, 168:10-13, 193:22-194:3, 201:10-25; *see also* 10/11/18 Trial Tr. at 48:3-65:11.) Mr. Jack worked as a professional mechanic from approximately 1962 to 1967. (10/4/18 Trial Tr. at 192:16-193:8, 200:17-201:5, 202:10-12.) He also performed

[2] Plaintiffs settled with several other Defendants before trial. (*See generally* Dkt.) At the beginning of trial, Borg-Warner Morse Tec, LLC ("Borg-Warner") also remained as a Defendant. Plaintiffs and Borg-Warner settled during trial. (*See* Not. of Settlement (Dkt. # 800) at 1.)

automotive work on multiple personal vehicles from 1955 until a few years before his death. (*Id.* at 99:1-5, 100:6-7.) Plaintiffs attempted to establish that the DCo and Ford products Mr. Jack used contained asbestos, and that neither Defendant warned consumers—either at the time of sale or later—about dangers related to their asbestos-containing products. (*See, e.g.*, 10/2/18 Trial Tr. 150:24-151:2, 164:18-165:1; 10/5/18 Trial Tr. at 197:7-13.)

Dr. Carl Brodkin, Plaintiffs' expert, offered testimony on the causal significance of Mr. Jack's exposure to Defendants' products. In Dr. Brodkin's view, mesothelioma results from "identified exposure[s]," which require "a well-characterized source of asbestos" and "an activity that disrupts the source." (10/9/18 Trial Tr. at 31:18-22.) Dr. Brodkin opined that "Mr. Jack's work with [DCo-attributable] gaskets [was] an identified exposure" and "was a cause of his mesothelioma." (*Id.* at 59:12-17.) Dr. Brodkin also opined that Mr. Jack's work with asbestos-containing Ford clutches and brakes were identified exposures. (*Id.* at 61:3-4, 11-16; *see also id.* at 67:25-68:4.) In addition, Dr. Brodkin acknowledged that Mr. Jack sustained causally significant asbestos exposure in the Navy, from 1961 to 1962, and at the Shipyard, from 1967 to 1980. (*Id.* at 33:19-34:3, 96:7-99:21, 105:14-108:9.)

After the presentation of evidence, the court instructed the jury on the applicable law. (10/11/18 Trial Tr. at 24:17-46:16.) The court explained that, with respect to both negligence and strict liability, Plaintiffs were required to prove that Defendants' conduct or products proximately caused Mr. Jack's mesothelioma. (Final Jury Instr. (Dkt. # 786) No. 19.) Relying on Washington law, the court defined proximate cause as "a cause that

was a substantial factor in bringing about the injury, even if the result would have occurred without it." (*Id.*); *see Mavroudis v. Pittsburgh-Corning Corp.*, 935 P.2d 684, 688-89 (Wash. Ct. App. 1997). The court also instructed the jury that, with respect to Plaintiffs' negligence claims, "[a] manufacturer of products is under a duty to use ordinary care to test, analyze, and inspect the products it manufactures." (Final Jury Instr. No. 20.) In addition, over Defendants' objections, the court allowed the jury to consider whether either Defendant was negligent in failing to uphold a duty to issue post-sale warnings about dangers related to its products. (*Id.* No. 21; *see also* 10/10/19 Trial Tr. at 223:22-224:25, 234:22-235:21.)

During closing argument, Plaintiffs' counsel argued, among other theories, that Defendants were negligent because they breached their post-sale duties to warn of dangers associated with their asbestos-containing products. Specifically, counsel argued that Defendants failed to issue post-sale warnings once they became aware of the dangers of asbestos exposure and that their failure to issue such warnings was a substantial factor in bringing about Mr. Jack's asbestos exposure at the Shipyard. (10/11/18 Trial Tr. at 62:5-63:18.) Specifically, counsel asserted:

> Even if . . . you believe that it was 100 percent the shipyard . . . the timeline before that happened is so important. . . . [F]or seven years before [Mr. Jack] ever set foot as an employee on Puget Sound Naval Shipyard, he was working with these companies' products day in and day out.
>
> And if they had put a warning on the box, if they had put a skull and crossbones, if they had said, "This can kill you. This can cause cancer. This can give you mesothelioma. This can kill your family," during those seven years before he ever went to the Puget Sound Naval Shipyard, if they just told him once, maybe he would have put on a mask at Puget Sound Naval Shipyard. Maybe he would have avoided the dust. Maybe he would have

> protected himself. Maybe he would have gone and worked somewhere else. But he could have minimized his exposure that they all say killed him, because they had seven years to warn him before he ever got to the shipyard. . . . They never did anything.
>
> And so the answer to question No. 1, for negligence, should be "yes" for both companies.

(*Id.*)

### C. The Jury's Verdict

The court provided the jury a general verdict form on which the jury was asked whether Plaintiffs proved their strict liability design defect, strict liability failure-to-warn, and negligence claims. (*See* Verdict Form (Dkt. # 791) at 2.) Following deliberations, the jury found that Plaintiffs did not prove their strict liability design defect and strict liability failure-to-warn claims against DCo or Ford. (*Id.*) The jury did not reach a verdict on Plaintiffs' negligence claims with respect to either Defendant. (*See id.*; *see also* 10/12/18 Trial Tr. at 7:16-21, 8:1-4.) The court therefore declared a mistrial on Plaintiffs' negligence claims. (10/25/18 Min. Order (Dkt. # 804) at 1-2.) Defendants timely renewed their motions for judgment as a matter of law. (*See* DCo Mot.; Ford Mot.)

## III. ANALYSIS

### A. Legal Standard

The court may grant a motion for judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party. *See* Fed. R. Civ. P. 50(a), (b). Judgment as a matter of law is warranted when "the evidence, construed in the light most favorable to the nonmoving

party, permits only one reasonable conclusion." *Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 999 (9th Cir. 2008). To avoid judgment as a matter of law, the nonmoving party must demonstrate that "there is substantial evidence supporting a verdict in favor of the nonmoving party." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Weaving*, 763 F.3d at 1111 (quoting *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987) (internal quotation marks omitted)). In deciding a motion for judgment as a matter of law, the court may not consider the credibility of witnesses, resolve conflicts in testimony, or weigh the evidence. *Gibson v. City of Cranston*, 37 F.3d 731, 735 (9th Cir. 1994). Moreover, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).[3]

//

[3] The same standard applies to renewed motions for judgment as a matter of law following a mistrial. *See Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2000), *vacated on other grounds*, 534 U.S. 801 (2001) ("A jury's inability to reach a verdict does not necessarily preclude a judgment as a matter of law."); *Elliott v. Versa CIC, L.P.*, No. 16-cv-0288-BAS-AGS, 2019 WL 414499, at *6 (S.D. Cal. Feb. 1, 2019) ("Notwithstanding the jury's failure to reach a verdict, if the standard for granting a motion for judgment as a matter of law is met, a renewed motion for judgment as a matter of law under Rule 50(b) is appropriate and may be granted.") (quoting Wright & Miller, 9B Fed. Prac. & Proc. Civ. § 2537 (3d ed. 2018)); *Rodriguez v. Cty. of Stanislaus*, 799 F. Supp. 2d 1131, 1139 (E.D. Cal. 2011) ("The same standard applies to a motion for judgment as a matter of law made after a mistrial because of jury deadlock.").

Because a Rule 50(b) motion is a renewed motion, a proper post-verdict motion for judgment as a matter of law is limited to the grounds asserted in the movant's pre-deliberation Rule 50(a) motion. *EEOC v. GoDaddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009) (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). Consequently, a party cannot properly "raise arguments in its post-trial motion or judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Freund*, 347 F.3d at 761. Nonetheless, Rule 50(b) "may be satisfied by an ambiguous or inartfully made motion [under Rule 50(a)] or by an objection to an instruction for insufficient evidence to submit an issue to the jury." *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989). Otherwise, the rule is an overly harsh one. *See GoDaddy Software*, 581 F.3d at 961 (internal quotation marks omitted) (quoting *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986)).

**B. Defendants' Motions**

Defendants move for judgment as a matter of law on parallel grounds. To begin, Defendants contend that Plaintiffs failed to present evidence sufficient for a reasonable jury to find that Mr. Jack was exposed to asbestos when working with their products and that any such asbestos exposure was a substantial factor in causing his mesothelioma. (DCo Mot. at 4-11; Ford Mot. at 3-7.) Defendants also assert that Plaintiffs' post-sale failure-to-warn theory of negligence—that is, that Defendants breached their duty to alert Mr. Jack of their products' hazards after the point of sale—is neither legally cognizable nor supported by substantial evidence. (*See* DCo Reply at 7-10; Ford Mot. at 9-12.)

//

As a threshold matter, the court considers whether Plaintiffs' negligence claims survive the jury's verdict of no liability on the strict liability counts. Under Washington law, a jury may consistently find that a defendant is not strictly liable under a design defect or failure-to-warn theory but is liable in negligence. (Pl. Resp. Ford at 9); *see also Davis v. Globe Mach. Mfg. Co.*, 684 P.2d 692, 696 (Wash. 1984); *Brown for Hejna v. Yamaha Motor Corp.*, 691 P.2d 577, 579-80 (Wash. Ct. App. 1984). As the Washington Supreme Court has explained, "negligence and strict liability are not mutually exclusive because they differ in focus: negligence focuses on the conduct of the manufacturer while strict liability focuses upon the product and the consumer's expectation." *Davis*, 684 P.2d at 696. Indeed, as the jury instructions in this case indicated, a manufacturer's duty of care is not precisely commensurate with its duties in strict liability. (*See* Final Jury Instr. No. 20 (noting that a manufacturer's duty of ordinary care encompasses a duty to test its products and keep abreast of scientific research in the field); *id.* No. 21 (describing the factual circumstances that trigger a manufacturer's post-sale duty to warn).)

In opposing Defendants' motions, Plaintiffs articulate just one surviving theory of negligence liability: Defendants failed to issue consumers like Mr. Jack post-sale warnings about the dangers related to their asbestos-containing products after they discovered, or should have discovered, the hazards of asbestos exposure. (*See* Resp. DCo at 9-11; Resp. Ford at 8-12.) Plaintiffs do not argue that Defendants negligently failed to test or analyze their products at the time of sale, or that Defendants failed to keep abreast of relevant research, much less cite any evidence to support those propositions. (*See*

*generally* Resp. DCo; Resp. Ford.) Nor do Plaintiffs even attempt to explain how a jury could reasonably find that Defendants' "acts or omissions" in designing their products constituted negligence, even as it rejected Plaintiffs' strict liability design defect and failure-to-warn claims. *See Brown*, 691 P.2d at 579-80; (*see generally* Resp. DCo; Resp. Ford.) The court thus declines to assess whether substantial evidence supports those theories of liability, and proceeds to consider Defendants' motions in view of the sole theory of negligence Plaintiffs have advanced: post-sale failure-to-warn liability.

In arguing that the jury could have reasonably found that Defendants breached their post-sale duties to warn, Plaintiffs analogize Mr. Jack's injuries to those of the plaintiff in *Lockwood v. AC & S, Inc.*, 744 P.2d 605, 619 (Wash. 1987). The *Lockwood* plaintiff argued that, if the defendants in that case had informed him of the dangers of asbestos after his exposure to their asbestos-containing products ceased, he could have reduced his risk of developing mesothelioma by stopping smoking—a practice known to elevate one's risk of asbestos-related disease. *Id.* Here, Plaintiffs emphasize Dr. Brodkin's testimony that mesothelioma is a dose-responsive disease. (10/9/18 Trial Tr. at 70:22-23 (noting that "[m]esothelioma risk increases with the cumulative dose of exposure").) Plaintiffs contend that, once Mr. Jack was exposed to asbestos from Defendants' products, Defendants were subject to "an ongoing duty to warn" so that Mr. Jack would refrain from future asbestos exposures that would further increase his risk of developing mesothelioma. (Resp. DCo at 10-11; Resp. Ford at 11.) According to Plaintiffs, "[Defendants'] *breach of that duty* can appropriately be considered a legal cause of Mr. Jack's failure to take measures to prevent or lessen the harm, that is, to

avoid additional asbestos exposure *from other sources*." (Resp. DCo at 10; Resp. Ford at 11.)

Defendants argue that Plaintiffs' post-sale failure-to-warn theory of negligence fails as matter of law for two reasons.[4] First, Defendants contend that the court erroneously allowed the jury to consider whether Defendants were subject to an ongoing duty to warn. (Ford Mot. at 9-11; DCo Reply at 8-10.) Second, Defendants assert that Plaintiffs failed to introduce evidence sufficient for a reasonable jury to conclude that Defendants breached a post-sale duty to warn and thereby proximately caused Mr. Jack's injury. (Ford Mot. at 11; DCo Reply at 9-10.) The court addresses these arguments in turn.

1. Jury Instruction on Post-Sale Duty to Warn

Defendants argue that the court erred in issuing an instruction that allowed the jury to consider whether Defendants breached their duty to warn Mr. Jack of the hazards of their asbestos-containing products after the point of sale. Specifically, Defendants

---

[4] The court acknowledges that DCo addresses post-sale failure-to-warn liability in its reply to Plaintiffs' opposition. (*See* DCo Reply at 7-10.) Because DCo makes these arguments in direct response to the negligence theory Plaintiffs advance in their opposition, the court may properly consider DCo's arguments on the post-sale failure-to-warn theory. *See, e.g.*, *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (noting that a court may consider new arguments raised in a reply brief if those arguments respond to an issue raised in the opposition). Moreover, DCo preserved its arguments regarding post-sale duty to warn in its Rule 50(a) motion and by taking exception to the jury instruction on post-sale duty to warn. (*See* 10/10/18 Trial Tr. at 234:22-235:21 (arguing that the post-sale duty to warn jury instruction was inappropriate because Plaintiffs failed to show "that such a warning would have done anything to lessen the harm" Mr. Jack suffered); *id.* at 269:19-270:4 (arguing that "[w]ith or without a warning, [DCo-attributable] gaskets were not a substantial factor in causing Mr. Jack's mesothelioma")); *see also Reeves*, 881 F.2d at 1498 (noting that a party may properly preserve an argument for Rule 50(b) purposes by objecting to a jury instruction on sufficiency-of-the-evidence grounds).

contend that Washington law imposes a post-sale duty to warn only when the evidence is sufficient to show that such a warning is practicable and could lessen the plaintiff's harm. (Ford Mot. at 10-11; DCo Reply at 8-10; *see also* 10/10/18 Trial Tr. at 264:22-266:10, 269:19-270:4.) Defendants further urge the court to conclude that, as a matter of law, Defendants did not owe Mr. Jack a post-sale duty to warn because Plaintiffs did not prove these threshold requirements. (Ford Mot. at 10; DCo Reply at 10.)

Under Washington law, a manufacturer has a post-sale duty to warn of dangers associated with its products so long as a rational trier of fact could determine that the manufacturer learned or should have learned of those dangers after the products were manufactured. *See Esparza v. Skyreach Equip., Inc.*, 15 P.3d 188, 199 (Wash. Ct. App. 2000); *see also* RCW 7.72.030(1)(c) (noting that, "where a manufacturer learned or a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured," the manufacturer "is under a duty to act with regard to issuing warnings or instructions"). Indeed, in the asbestos context, the Washington Supreme Court has expressly concluded that, "where a person's susceptibility to the danger of a product continues after that person's direct exposure to the product has ceased, the manufacturer still has a duty after exposure to exercise reasonable care to warn the person of known dangers, if the warning could help to prevent or lessen the harm." *Lockwood*, 744 P.2d at 619; *see also Palmer v. Fibreboard Corp.*, No. 36500-2-I, 1997 WL 134543, at *3-4 (Wash. Ct. App. Mar. 24, 1997). Put otherwise, a manufacturer or seller of asbestos-containing products has a continuing duty to warn if a jury could reasonably find that the factual circumstances that trigger that duty—that is,

the manufacturer knew or should have known of dangers related to its products after the date of manufacture or sale—are satisfied.

Here, the jury instruction correctly accounted for the factual predicate to Defendants' continuing duty to warn. The instruction explained the general rule that a manufacturer is subject to a post-sale duty to warn only "when" the manufacturer learned or should have learned of a danger connected with its products. (Final Jury Instr. No. 21.) The instruction further stated that, "[i]n such a case," the manufacturer must act as a reasonably prudent manufacturer would under the circumstances. (*Id.*) The jury was thus free to conclude that Defendants did not know, or could not have reasonably been expected to know, of any dangers associated with their asbestos-containing products during the relevant time period. (*See id.*) In other words, the court properly permitted, but did not require, the jury to determine whether one or both Defendants breached a post-sale duty to warn Mr. Jack of any hazards related to their asbestos-containing products. *See Lockwood*, 744 P.2d at 619.

Additionally, the court rejects Defendants' argument that a court may allow a jury to contemplate breach of a post-sale duty to warn only if the plaintiff has established that a post-sale warning was likely to reach the plaintiff. (*See* Ford Mot. at 10-11; DCo Reply at 8-9.) Defendants rest that argument on *Lockwood*, in which the Washington Supreme Court noted that, in the asbestos context, "a [post-sale] warning should be required to the extent practicable." *See Lockwood*, 744 P.2d at 619. Contrary to Defendants' assertions, however, the *Lockwood* court did not predicate the existence of a continuing duty to warn on the likelihood that the manufacturer's warning would reach the asbestos-exposed

plaintiff. Rather, the court explained that the form a post-sale warning must take is highly context-dependent. *See id.* As the court acknowledged, "it will depend on the circumstances if such a warning to previous users of the product must be made by direct personal contact with such users." *Id.* In fact, the *Lockwood* court expressly suggested that a manufacturer may satisfy a post-sale duty to warn by issuing "notices to physicians or advertisements," rather than individual consumers. *Id.* Here, the jury instruction properly accounted for the fact-specific nature of the form of an adequate post-sale warning and allowed the jury to undertake that inquiry: the instruction noted that a continuing duty to warn "is satisfied if the manufacturer exercises reasonable care to inform product users" but did not suggest that a post-sale warning is adequate only if it reaches the intended consumer. (Final Jury Instr. No. 21.)

For the foregoing reasons, the court concludes that it properly instructed the jury on a post-sale duty to warn theory of negligence liability. The court now considers whether substantial evidence supports a finding that one or both Defendants failed to uphold a post-sale duty to warn Mr. Jack of the hazards related to asbestos-containing products and whether that breach was a substantial factor in increasing Mr. Jack's risk of mesothelioma.

2. Whether Substantial Evidence Supports a Post-Sale Duty to Warn

Plaintiffs argue that a jury could reasonably conclude that DCo and Ford were negligent in failing to warn consumers like Mr. Jack of the dangers of their asbestos-containing products and that such negligence was a proximate cause of Mr. Jack's mesothelioma. (Resp. DCo at 11; Resp. Ford at 12.) Plaintiffs contend that, had

DCo or Ford warned Mr. Jack of the hazards related to their asbestos-containing products after the time of sale, "Mr. Jack would have taken steps to avoid subsequent asbestos . . . from all sources," including those he encountered at the Puget Sound Naval Shipyard." (Resp. DCo at 11; Resp. Ford at 12.) In particular, Plaintiffs emphasize that Mr. Jack testified in his deposition that, while he was working at the Shipyard, "[i]f [he had] been aware of an asbestos hazard problem," he would have taken precautions to protect himself from asbestos exposure. (10/5/18 Trial Tr. at 129:9-10; *see also id.* at 129:25-130:1 ("If I had been told and warned, I would have taken precautions, yes, sir.").)

For purposes of its analysis, the court assumes that a reasonable jury could conclude that Plaintiffs proved the factual circumstances that trigger a manufacturer's post-sale duty to warn—that is, that Mr. Jack purchased and used Defendants' asbestos-containing products, and, at some point thereafter, Defendants knew or should have known of the asbestos-related hazards that accompanied consumers' use of those products. *See Esparza*, 15 P.3d at 199; (Final Jury Instr. No. 21.) The court further assumes that Defendants knew or should have known of the dangers of their asbestos-containing products, and thus assumed a post-sale duty to warn, at a point in time that preceded at least some of Mr. Jack's medically significant exposures to asbestos at the Shipyard and in his personal automotive work. Finally, the court assumes that Defendants failed to adequately alert Mr. Jack and consumers like him of the dangers of asbestos exposure from their products. The court need not determine whether these

//

assumptions are supported by substantial evidence, because Plaintiffs' post-sale failure-to-warn theory of negligence fails on causation grounds.

The court finds that Plaintiffs failed to present evidence sufficient for a reasonable jury to conclude that Defendants' breach of their post-sale duty to warn was a proximate cause of Mr. Jack's injury. Put simply, Plaintiffs' theory of post-sale failure-to-warn liability is inherently speculative. Plaintiffs point to no evidence of record that Mr. Jack was aware that he was working with asbestos-containing products at the Shipyard or his subsequent automotive work.[5] (*See generally* Resp. DCo; Resp. Ford.) Absent such evidence, the jury could not reasonably conclude that Mr. Jack would have attempted to protect himself from asbestos, even if Ford or DCo had issued post-sale warnings about their own products. Moreover, Plaintiffs cite no evidence of the particular protective measures Mr. Jack would have undertaken and whether those measures would have reduced his exposure at the Shipyard or elsewhere in an "important" or "material" way. (*See* Final Jury Instr. No. 19 (explaining that a "substantial factor" is a "an important or material factor"); *see generally* Resp. DCo; Resp. Ford.)

Accordingly, to conclude that DCo or Ford's failure to issue post-sale warnings was a substantial factor in increasing Mr. Jack's risk of mesothelioma, the jury would have had to engage in a series of speculative inferences untethered to the evidence of record: that Mr. Jack knew that he was working with asbestos at the Shipyard and in his

[5] In fact, shortly before stating that he would have taken precautions to protect himself from asbestos at the Shipyard had he "been aware of an asbestos hazard problem," Mr. Jack averred that he did not know about asbestos generally before the late 1980s. (10/5/18 Trial Tr. at 128:18-20.)

personal automotive work, that he would have taken protective measures adequate to minimize his exposure to asbestos, and that those measures in fact would have reduced his exposure to asbestos in a causally significant manner. This exercise in conjecture is insufficient to withstand Defendants' motion for judgment as a matter of law. *See Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802-03 (9th Cir. 2009) (granting judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict").

In sum, the court finds that Plaintiffs have failed to establish that a reasonable jury could find, on the basis of substantial evidence, that Defendants' breach of their post-sale duties to warn Mr. Jack about the dangers of their asbestos-containing products proximately caused Mr. Jack's injury. Because Plaintiffs did not advance any other theory of negligence in opposing Defendants' motions, much less demonstrate that substantial evidence in the record supports alternative negligence theories, the court need not reach Defendants' remaining arguments on causation and exposure. The court thus GRANTS Defendants' motions for judgment as a matter of law.

//

//

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motions for judgment as a matter of law. (Dkt. ## 816, 817.) The court DIRECTS the Clerk to enter judgment for Defendants and close this case.

Dated this 28th day of May, 2019.

The Honorable James L. Robart
U.S. District Court Judge